## Case No. 9,578.

### MILLER v. KEYS.

[3 N. B. R. 224 (Quarto, 54).] [1]

District Court, D. South Carolina. 1869.

BANKRUPTCY — FRAUDULENT PREFERENCE — UNABLE TO PAY DEBTS—INSOLVENCY—PRIMA FACIE CASE — CONSIDERATION FOR NOTE — PRICE OF SLAVES.

1. Creditor upon a note of which slaves were part consideration, filed petition in involuntary bankruptcy against a farmer, charging him with having made fraudulent preferences, being insolvent. *Held*, a note made prior to the emancipation proclamation, of which slaves were a consideration, is valid, and the debt will support a petition of creditor in bankruptcy.

2. To constitute a fraudulent preference where the alleged bankrupt is claimed to be insolvent, he must so be and know himself so to be, and actually intend and actually give a preference to a creditor.

3. A trader unable to pay his debts in the ordinary course of business is prima facie insolvent, and the burden of proof is upon him. in such a case, to show that he is solvent—aliter, as to a farmer, where the petitioner must prove the actual insolvency of the alleged bankrupt.

This was a petition by creditor [H. C. Miller] for involuntary bankruptcy of the respondent [J. Crawford Keys] upon four counts, only three of which, however, were relied upon as material, to wit: A mortgage of some three thousand one hundred acres of land to one Tompkins, to secure a debt of four thousand dollars; a subsequent conveyance of the same in fee to pay this debt and six thousand dollars more; the delivering up to Keys & McCully of a note for one thousand dollars, to whom respondent owed seven hundred dollars; each count alleging that the transaction specified was made whilst the respondent was insolvent, and with the intent to give a preference. The petitioner claimed two notes, and the position was taken in the outset by the defense, that he had no status in court, on the ground that one was paid and the other was "tainted with negro." The testimony was pretty conclusive as to the first, but the last was given for the balance of a large transaction had about the commencement of the war, only a

---

[1] [Reprinted by permission.]

portion of which was negroes. His honor charged the jury that a note for negroes before Lincoln's proclamation took effect was perfectly valid, but that the question did not arise in this case properly, as the note grew out of a mixed transaction, and from the original proportions of the consideration, the respondents, by whatever basis of calculation they might adopt, must owe the petitioner two hundred and fifty dollars, which was enough to establish his right to be in court.

A great deal of testimony was offered on the question of insolvency. The respondent told petitioner, when the latter first demanded payment, after the war, that he was (then) wholly unable to pay—could scarcely live, and the English rule of technical insolvency was strongly pressed. Various estimates were made of the value of the lands mortgaged (and subsequently conveyed) to Tompkins, but the preponderance of the testimony made them a hard bargain on the whole at fifty cents per acre; the note delivered up to Keys & McCully was shown to have been given for a two-third interest in a similar tract in the mountains of Pickens. It was further shown that at the time this note was re-delivered, the respondent owed K. & McC. about seven hundred dollars, that no credit was given, and they went on furnishing him with supplies and fertilizers, and, as one of the firm said, the respondent's credit had been perfectly good with them, and remained unimpaired, and that no settlement had yet been made. The case was argued at length and with great zeal and ability on both sides.

McGowan & Perry, for petitioner.
Reed & Trescote, for respondent.

THE COURT charged the jury with great clearness, and very fully. Both parties expressed their satisfaction, and declined to ask special instructions. Without attempting to quote the charge, THE COURT said, in substance, that to make out the case it was necessary that insolvency and a preference must concur. A trader unable to pay his debts in the ordinary course of business, is insolvent, prima facie, and it is incumbent on him to show that he is not so in fact. This rule does not apply with the same strictness to the farmer, and as to them this rule is reversed. The petitioner must take the onus of showing actual insolvency. The "preference" must be an advantage actually given to one or more of his creditors over the others, with the knowledge of his situation and the intent to accomplish this end. The "intent" is an element of the objectionable transaction, according to the letter of the law, and though one is presumed to intend the natural results of his acts, the intent is essential, and must be shown by his acts and the circumstances. When the respondent sold the land to Tompkins, he believed at least that he was paying a debt of ten thousand dollars, and if he considered these lands of such comparatively insignificant value, it would be hard to believe, upon the estimate of the relative value of his assets and liabilities, that he intended or thought he was giving a preference to this creditor. The solution of the mortgage is much more difficult, not only on account of the difference of the sum, but also because it was merely a security for that sum, and did not relieve his estate of it by a settlement in full. The Keys & McCully transaction is a peculiar one, and is to be solved by the testimony which you have. No credit was given upon the books, but if, from the testimony, you are satisfied that the seven hundred dollars was paid by the respondent in full, by the re-delivery of the one thousand dollar note, then is not this more than he could pay to others, and to that extent a preference? If you shall conclude that this note was re-delivered to meet the heavy advances of provisions and of fertilizers subsequently made, as well as the debt already contracted, then you may reach a different conclusion. These are questions which it is your peculiar province to solve. The insolvency and the intent to give preference must concur.

The jury returned a verdict of not guilty.