## Case No. 9,803.

### MORGAN et al. v. MASTICK.

[2 N. B. R. 521 (Quarto, 163).] [1]

District Court, N. D. Ohio. 1869.

BANKRUPTCY—OBJECT OF ACT—PREFERENCES—INTENT—WHO MAY HAVE THE BENEFIT OF BANKRUPT ACT—DISCHARGE.

1. The object of the bankrupt act [of 1867 (14 Stat. 517)] is to compel an equal distribution of a debtor's assets among all his creditors.

2. A debtor cannot discriminate among his creditors and prefer any one of them, but under the thirty-ninth section commits an act of bankruptcy if he makes a payment to one creditor before another.

3. Two things are to be considered to make such payment fraudulent, first. the debtor must be insolvent; second. he must intend to prefer his creditor.

4. Insolvency is a present inability to pay debts when due. even when there is surplus property more than enough to pay them at some future time.

[Cited in Graham v. Stark, Case No. 5,676.]

5. Under English and Massachusetts law only traders could take advantage of the bankrupt act; but under the present law any person may.

6. The intent constitutes the offence, not morally fraudulent but merely made so by the act of congress.

---

[1] [Reprinted from 2 N. B. R. 521 (Quarto, 163), by permission.]

7. If a debtor honestly believes himself solvent and pays a just debt, such payment cannot be considered fraudulent, though bankruptcy ensue; otherwise, if he is aware of his insolvency.

8. Fraudulent payments may be recovered by bankrupt's assignee.

9. Debtor is not entitled to certificate of discharge if he makes a fraudulent payment.

10. The intent is to be proven as a fact, either by direct evidence, or as the necessary and certain consequence of other facts clearly proved.

[Cited in Re Gregg, Case No. 5,797.]

On the 15th of September, A. D. 1868, said petitioning creditors [Morgan, Root & Co.] filed their petition in involuntary bankruptcy against the said defendant [Erman E. Mastick], charging him with committing an act of bankruptcy under the thirty-ninth section of the bankrupt act, within six months before the filing of the petition, which act of bankruptcy consisted in making while insolvent a payment of money to certain creditors, relatives of the bankrupt, with the intent to give them a preference over the general creditors.

The defendant, a young man about thirty years of age, was a retail merchant in East Claridon, Geauga county, Ohio. In May last his store and stock of goods were consumed by fire, on which, however, he had a policy of insurance for four thousand dollars, receiving for it upon settlement the sum of three thousand two hundred and fifty dollars. His debts amounted to nearly seven thousand dollars, including a debt of eight hundred dollars due his father, Nathaniel Mastick. The latter was also surety for him on obligations to the amount of one thousand six hundred dollars. The bankrupt's assets consisted of personal property, notes, and accounts, a house and lot, and his insurance money, all of which, according to his own valuation, amounted to about one thousand dollars less than his liabilities, including the debt of eight hundred dollars due his father, which, it was agreed by his father, he need not take into account. It was evident that if the defendant availed himself of the benefit of the exemption laws, his assets upon his own estimate would not pay all his liabilities. The defendant answered the petition by denying his bankruptcy, and demanded a trial by jury.

At the present term the case came on to be tried upon the petition and answer, during which the following testimony was given: D. W. Tinan, an agent of Gordon, McMillan & Co., called upon defendant to pay a debt of about two hundred and fifty dollars or secure the same, Mastick having then collected about one thousand dollars from the insurance company, and on the request of Tinan informed him that he had expended the whole sum in taking up notes on which his father was surety, but that he would collect the balance of his insurance money and assets, and promised to pay G., McM. & Co., as soon as he had done so. In September

Tinan again called upon Mastick, and was informed that the balance of the insurance money had been collected, but that other creditors, relatives of Mastick, had been paid. Tinan pressed the defendant to secure G., McM. & Co.'s claim by notes or personal security; he refused, informing Tinan that the balance of his creditors would have to wait for their pay until he could collect or earn enough. Charles Rhodes, also agent for G., McM. & Co., visited Mastick and told him that what he had done would not stand as against other creditors. Mastick took the bankrupt act and read, informing Rhodes that he presumed he had got himself into a bad fix. He refused, however, to secure the debt, saying he would take legal advice.

The bankrupt being put upon the stand testified to the same facts, but did not remember having told Tinan that his creditors would have to wait till he could earn the money. He also testified that when Tinan and Rhodes were at his place, he supposed he was solvent. That he had paid some of his creditors, believing that he was able to pay them all. His father had advised him to pay first those debts that were drawing the highest rate of interest, which advice he followed. About half the debts he had paid were those on which his father was security. That when he paid the debts referred to he did not intend to prefer them, for he then intended and now intends to pay all. The plaintiffs' attorney claimed that the fact of insolvency was established, and that the payment of the debts referred to was, under the bankrupt law, preferring them, and therefore, an act of bankruptcy; and cited among other authorities, the case of Jones v. Howland, 8 Metc. [Mass.] 377, wherein Hubbard, J., says: "The result of these cases is the drawing of a distinction between an actual insolvency and a contemplated bankruptcy; between the payment of a just debt in the course of business, though insolvency exists and is known to the insolvent, and the design to give a preference in view of stopping payment. And in view of all the authorities we hold the law to be this: that though insolvency in fact exists, yet if the debtor honestly believes he shall be able to go on in his business, and with such belief pays a just debt, without a design to give a preference, such payment is not fraudulent, though bankruptcy should afterwards ensue; and on the other hand, if the debtor, being insolvent, and knowing his situation, and expecting to stop payment, shall then make a payment, or give security to a creditor for a just debt, with a view to give him a preference over the general creditors, such payment, or giving security, is fraudulent as against the creditors; and property that is transferred in making such payment, or giving the security, may be recovered by his assignee, and the debtor will not be entitled to a discharge under the statute. It rests

upon the intent with which the act was done; and the intent is to be proved, as a fact, either by direct evidence, or as the necessary and certain consequence of other facts clearly proved."

Plaintiffs' attorney also claimed: First. That insolvency, as the term is used in the bankrupt law, means the condition of a person unable to pay his debts as they fall due, or in the usual course of trade and business, although he may be able to pay his debts at a future time, upon the winding up of his business. In support of which were cited Hil. Bankr. 2; Thompson v. Thompson, 4 Cush. 127; Lee v. Kilbourn, 3 Gray, 594. Second. That when a debtor is insolvent, and with knowledge of that fact, makes payment to one creditor, knowing that such payment will, in fact, and necessarily must, operate as a preference to such creditor, he is conclusively presumed in law to have made such payment with intent to prefer such creditor. Hil. Bankr. 336; Avery & H. Bankr.; Arnold v. Maynard [Case No. 561]; Denny v. Dana, 2 Cush. 172; Beals v. Clark, 13 Gray, 18.

Defendant's attorney claimed that if Mastick at the time he made the payment honestly supposed that he was able to pay all his debts and intended to pay them, he did not make the payment with the intent to prefer his creditors, within the meaning of the bankrupt act.

The difference between the attorneys was mainly that while the plaintiffs' attorney claimed, that being insolvent and making a payment in full to one creditor, which in fact resulted in a preference, the defendant was presumed to have intended what was the natural and necessary result of his act, and therefore was guilty of an act of bankruptcy, the defendant's attorney claimed and insisted that the intent to prefer could not be deduced as an inference from the fact of preference, and cited Hil. Bankr. 329; 1 Metc. [Mass.] 366; 8 Metc. [Mass.] 377.

SHERMAN, District Judge, held that the decision in 8 Metc. [Mass.] 377, was a correct statement of the law of the case, and as such read it in full to the jury.

The jury could not agree as to the intent; while all were unanimous as to the defendant being insolvent, ten of them regarded the intent as fraudulent, and two that it was not. They were therefore discharged.