# Case No. 10,559.

## In re OREGON BULLETIN PRINTING & PUB. CO.

[13 N. B. R. (1876) 503;[1] 1 Cin. Law Bul. 87.]

### District Court, D. Oregon.[2]

BANKRUPTCY—BURDEN OF PROOF—"INSOLVENCY" — PETITIONING CREDITOR — EVIDENCE AGAINST CORPORATION — PAPER SIGNED BY OFFICER — PAYMENT OF DEBTS BY SOLVENT DEBTOR — ANSWER TO PETITION—WAIVER OF OBJECTION.

1. In a case of involuntary bankruptcy, the burden of proof is on the petitioning creditor.

2. A debtor is insolvent if his property, put up on reasonable notice for sale, where it exists un-

1 [Reprinted from 13 N. B. R. 503, by permission.]

2 [Reversed in Case No. 10,561.]

der the circumstances of the case, will not bring cash enough to pay his debts.

[Cited in Re Jacobs, Case No. 7,159; Re Seeley, Id. 12,628.]

3. A petitioning creditor is not required to make full and complete proof of the debtor's insolvency, but may offer proof tending to show his insolvency, and the debtor must then explain the evidence if possible, for he is best acquainted with the condition of his own affairs.

4. A defense which has been stricken out of the case may be given in evidence as an admission.

5. A paper sworn to and filed by an officer of a corporation is competent evidence against it, but is not conclusive.

6. No particular or specific evidence of an intent to prefer is necessary when a payment is made by an insolvent debtor, for the act itself is sufficient evidence of the intent.

7. The law will not presume an intent to prefer when the debtor is not aware of his insolvency, but it is incumbent on him to show it.

8. The knowledge or motive of the preferred creditor is immaterial in an involuntary proceeding.

9. A payment by an insolvent debtor is an act of bankruptcy, although it is made in the usual course of business.

10. A debtor who is solvent may pay any or all of his debts, although proceedings in bankruptcy are pending against him.

11. A voluntary contribution received by a debtor, does not constitute a debt due by him.

12. A voluntary agreement between certain persons, to which the debtor is in no wise a party, to make a contribution to him, does not create an indebtedness to him.

13. A corporation by appearing and answering a petition, thereby admits that it may be proceeded against in bankruptcy, and cannot afterwards object that the petition does not allege that it is a moneyed, business, or commercial corporation.

[In bankruptcy. The case was formerly heard upon motion to strike out certain denials in defendant's answer as irrelevant. Case No. 10,558.]

H. G. Thompson and George H. Durham, for petitioning creditors.

Joseph N. Dolph and Joseph Simon, for defendant.

DEADY, District Judge. The plaintiffs in this case, Blake, Robbins & Co., Leuthwait & Smith, H. W. Scott, and H. L. Pittock, called in the pleadings the petitioning creditors, bring this action to have the defendant declared a bankrupt. The petition alleges that the defendant is a corporation organized under the laws of this state, with its place of business at the city of Portland, and that at the commencement of this action it owed debts to certain persons, naming them, amounting to about twelve thousand dollars, of which sum four thousand four hundred and eighty-one dollars was due these plaintiffs, and by them provable in bankruptcy; that the defendant on June and July 1, 1875, was insolvent, and committed two several acts of bankruptcy by paying the Western Union Telegraph Company the sums of six hundred and twenty dollars and seven hundred and ten dollars, with intent to give said telegraph company a preference, and also on August and September 1, 1875, was insolvent, and committed two other acts of bankruptcy, by paying to Alexander P. Ankeny on each of said dates the sum of one hundred and forty dollars, with intent to give said Ankeny a preference. The defendant, by its answer, admits that it is a corporation formed under the laws of Oregon; that it is and was indebted to the plaintiffs, except Scott's debt of three thousand dollars, as alleged; that the several payments to the telegraph company and Ankeny were made by it as alleged; and denies that it is or was indebted to Scott; that it is or was insolvent at the dates of said payments, or any of them; that said payments or either of them were made with intent to give said telegraph company or Ankeny a preference; but avers that said payments and each of them was made in the ordinary course of its business, when and as they became due, and without any intent to prefer said creditors, or to defeat, hinder, impede or delay the operation of the bankrupt act.

In the course of the argument, something has been said about the nature and operation of the bankrupt act [of 1867 (14 Stat. 517)],— the law under which this proceeding takes place. It is hardly necessary to say to you, that you and I are both here to administer the laws as we find them; and it does not become us in any way to obstruct the fair and full administration of any of the laws of the United States on account of our personal opinions or prejudices concerning its propriety or expediency. The bankrupt act has been enacted by the congress of the United States, representing the people of the United States, in pursuance of an express authority to that effect in the constitution of the United States. It is intended to meet the case when a debtor becomes unable to pay his debts as they become due in the ordinary course of business, to prevent any of his creditors from getting an advantage over the others, either by the pertinacity or industry of such creditor or connivance of the debtor. It goes upon the just and proper theory that the property of an insolvent debtor belongs to his creditors and not to himself, and that such creditors have a right to dispose of it and distribute the proceeds among themselves in proportion to the amount of their respective claims; that such debtor has not a right to dispose of and distribute it among his creditors as he may think proper or feel inclined to; and that this is a just and proper view of the subject it seems to me cannot be successfully gainsaid. The law also proceeds upon the theory in such cases, that economy, and the interest of the debtor and the whole body of creditors will be promoted, by preventing separate and expensive proceedings by each of such creditors, and therefore the whole matter of the insolvent estate, and the claims of the respective creditors upon it, shall be settled in one proceeding, with as little controversy and

expense as possible. There is then no special hardship in this law as compared with any other intended to regulate the rights and relations between creditors and an insolvent debtor. In some respects it is a hardship and an unpleasant thing to enforce the collection of a debt against a failing party by any means which can be provided, and which at the same time are effective. But as long as debts are to be collected by legal proceedings, and insolvent debtors are required to surrender their property to their creditors, the proceedings provided by the bankrupt act are as humane, just, and economical a mode of accomplishing this end as has ever been devised.

A question has been made at the last moment in this case as to whether the law casts the burden of proof upon the plaintiffs or defendant. As the law stood prior to June 22, 1874, it contained a provision in section 41, which in effect required the debtor to show upon the trial that the facts stated in the petition were not true, or else the verdict should be found against him. In some respects this was a harsh and hard rule of evidence, but from the nature of the case, in most respects it did not differ in operation from the ordinary rule on the subject. Most, if not all of the material allegations in a petition in bankruptcy relate to the conduct of the debtor or the state of his affairs. In the nature of things, he is usually better informed as to the truth and details of the alleged transactions than his creditors can be. Therefore, upon slight proof against him in these respects he would be called upon to explain and show that his conduct had been proper or that his estate was solvent. By section 14 of the act of June 22, 1874 (18 Stat. 182), section 41 of the act of March 2, 1867, was amended so as to repeal this provision requiring the debtor to disprove the facts in the petition, and therefore counsel for the defendant contends that the burden of proof is now upon the plaintiffs. On the other hand counsel for the plaintiffs insist that the act of June 22, 1867, supra, is void and inoperative, because the said act of March 2, 1867, was repealed by the first clause of section 5596 of the Revised Statutes on said June 22, 1874, and, therefore, there was no such act in existence to amend, at the time of the passage of the supposed amendatory act. How this question should be decided I am not quite certain in my own mind, but for the purposes of this trial I will follow my impression, and hold that the act is operative, and that the rule prescribed in section 41 of the act of March 2, 1867, is, therefore, changed. This being so, the burden of proof in this case is upon the plaintiffs, and the defendant is not called upon to show that the facts stated in the petition are not true, except it be in such particulars and under such circumstances as your attention will be called to particularly hereafter.

It is incumbent upon the plaintiffs, then, to make out their case to establish to your satisfaction under the instructions of the court three things: 1. That the defendant owed the plaintiffs, or some of them, the debts alleged to be due them in the petition. 2. That the defendant was insolvent at the dates of the several payments to the telegraph company and Ankeny, or one of them; and 3, that said defendant made said payments or one of them, being so insolvent, with intent to give such creditor a preference over its other creditors. Upon the first point you can have no difficulty, as it is admitted by the defendant in its answer that it did owe all the plaintiffs' debts as alleged in the petition, except Scott's. That admission is sufficient upon this branch of the case to enable plaintiffs to maintain this action. As to the second point, it is a matter for you to decide, and I instruct you upon it as I have heretofore held, in Re Randall [Case No. 11,551], that a party is insolvent when he is unable to pay his debts as they become due, no difference whether it is probable or not that if time is granted him he may be able to pay them sometime thereafter. A debtor must pay his debts in money; that is the only legal tender. He must be able to pay them 'n money; either because he has the money at the time or because his property, if put to sale at once, could be converted into cash sufficient to pay them. This is as favorable an exposition of the matter for the defendant as can be made. The defendant need not have the money on hand to pay its debts —not a cent of it—but if its property, put up, upon reasonable notice, for sale, where it exists, under the circumstances of the case, will bring cash enough to pay its debts, it is not insolvent—it is able to pay, and, therefore, solvent. But if it will not, then it is insolvent—unable to pay. As this court said in Re Randall, supra, if the amount of a debtor's debts cannot be made out of his property on legal process—on execution—when they become due, he is insolvent. This is a question upon which the plaintiffs are not required to make that full and complete proof that they would be of an ordinary issue in which they held the affirmative. Although the burden of proof is upon them, this is rather in the nature of proving a negative, or of a proposition concerning which the facts are best known to the adverse party. The defendant knows best what its assets are, what its debts are, and what the condition of its affairs is. It can most conveniently and certainly show the state of its affairs, and whether it is insolvent or not; and, therefore, when the plaintiffs offer proof tending to show that the defendant is insolvent and unable to pay its debts, explanation, so far as it appears that it can conveniently make it, is required at its hands. If any explanation of its affairs, which it appears to you it could conveniently have made, is not made by it, this is a circumstance against the defendant to

be considered by you in making up your minds upon this question. Still, in the matter of proof, you must be satisfied as reasonable men, considering the definition of insolvency given you by the court, that the defendant was insolvent at some of the dates of the alleged preferences, before you can find by your verdict that it was so.

In considering this question, you should take into account the nature of the defendant's property—what it consisted of—how marketable it was—whether it was of a kind that could be sold in the market at any time for something like its cost or ordinary value, or otherwise. If the defendant's means are in unsalable property, and it must be converted into cash for the purpose of paying its debts, it is the misfortune of the defendant, and it must bear the consequence of that misfortune. That circumstance does not preclude the plaintiffs from demanding their debts, or seeking the collection of them by any mode appointed by the law. It is alleged in the petition that the debts of the defendant, at the time of the filing thereof, amounted to nearly twelve thousand dollars. The answer of the defendant admits this allegation, except as to the debt claimed by Scott, upon which three thousand dollars is alleged to be still due. Counsel for the respective parties footed up in their arguments to you the statements made by the witnesses as to the value of the defendant's property. So far as this branch of the case then is concerned, take this property, and from the evidence, considering the kind of property it is, and relying upon your judgments and experience as men of common sense and ordinary observation, and say what it is worth—was worth on or between the date of the alleged preferences—what it was worth in cash—what could be realized from it on execution. Then ascertain what the defendant owed at the same time, and compare them; and if what it owed was substantially in excess of what its property was worth, the defendant was insolvent; but if not, then it was not insolvent.

A written admission of the defendant's has been offered in evidence upon this point, which it is the duty of the court to construe and give you the effect of. Eleven days after this action was brought, the defendant filed this paper in this court as a defense to the action. It was afterwards determined by the court that it was no defense, and it was stricken out of the case. But, nevertheless, it is a part of the files and records of this court, and is an admission as to the facts contained in it. The paper reads: "It (the defendant) denies that one-fourth in number of its creditors have petitioned to have it adjudged a bankrupt; and it denies that the aggregate of the debts of said creditors, filing said petition, constitute an amount one-third of the debts provable against it under the act of congress, entitled 'An act to establish a uniform system of bankruptcy throughout the United States, approved March 2, 1867.'" This is an admission, statement, or assertion that four thousand four hundred and eighty-one dollars, which I believe to be the aggregate of the debts stated in the petition as being due the plaintiffs, was not one-third of the debts of the defendant, provable against it in bankruptcy. Of course, if this statement be true, the debts of defendant would amount to not less than thirteen or fourteen thousand dollars. But the writing proceeds: "And the Oregon Bulletin Printing and Publishing Company avers that the creditors filing said petition constitute less than one-fifth in number of its creditors, and the aggregate of their debts provable under said act amounts to less than one-twenty-fifth of the debts so provable." If this statement is to be construed as referring to all the petitioner's debts, the same as the first one, it would follow that the debts of the company were then about one hundred thousand dollars, because twenty-five times the sum of the petitioner's debts amounts to that sum, and more.

It is contended on the part of the defendant, that the natural and legal signification of these words, "And the aggregate of the debts provable under said act amounts to less than one-twenty-fifth of the debts so provable," is, that the debts of the petitioners, which the defendant admits to be debts due by it and provable against it, are only one-twenty-fifth of the whole debts of the corporation. There is no allegation in this statement that the alleged debts of the petitioners do not exist; there is no direct allegation to that effect, nor that they are not provable under the act; but it is claimed that the statement in the writing that the aggregate of the debts of the petitioners provable under the act is less than one-twenty-fifth of the whole debts of the corporation does not admit that any of such debts are provable. It seems to me that this is rather a fine distinction to put upon the matter, and that it is not the natural and ordinary signification and effect of the words, "the aggregate of their debts provable under the act amounts to less than one-twenty-fifth of the whole debts of the defendant." However, I leave it for you to say what is meant by the statement. If it means that the aggregate of the petitioner's debts is only one-twenty-fifth of the whole debts of the corporation, then it is an admission that the debts of the corporation exceed the sum of one hundred thousand dollars. On the other hand, if it be assumed, as now claimed by the defendant, that there is an implied protest or assertion in this latter statement that all the debts of the plaintiffs were not provable under the act, still, it being now admitted that all the debts of the plaintiffs were then due and provable under the act, except Scott's, it is an admission that the debts of the corporation amounted to more than twen-

ty-five times the aggregate of the plaintiffs' debts, less Scott's—or a sum near thirty-seven thousand dollars.

With these suggestions, I leave this statement with you, to find the legal effect and purport of the words used in it—for you to construe and give its effect along with the other proof in this case; only adding this: a corporation is an invisible, intangible being; it is a legal entity, and an abstraction; it has no personal existence except through its officers, and whatever they do, it does, and it is bound by them the same as you are bound by your acts in your own affairs. A corporation cannot say, "True, this man said so and so, and he was our manager and secretary, but we are not bound by what he said,"—any more than you can. Corporations are represented to the world, and the world deals with them, through their officers; and whatever such officers do, binds the corporation the same as if it was a natural person. Of course, it is not always concluded by them any more than a natural person. It may show that the truth is otherwise, except where the law in particular cases estops a person to deny what he has said. A corporation is the same as a natural person in this respect; whoever represents it for the time being is the corporation, and whatever he does or says is its act. In this case, the president of the corporation, Mr. Denny, deliberately came into this court, filed this paper, signed by him, and verified by his oath, to the effect that the debts of the petitioners provable under the act did not amount to one-twenty-fifth of the debts of the company. But the defendant is not concluded by this statement. It may show that it was a mistake—that the contrary is true. But it is sufficient evidence of the facts contained in it, and unless explained, it is sufficient for you to act upon, just as any other solemn admission of any other person. If you should be satisfied from the evidence that it is incorrect, that it was a mistake, from whatever motive or reason it was made, then you would not follow it. But you are not to jump at the conclusion that it is a mistake, because an admission made under those circumstances by a party representing a corporation is presumed to be true. But as I have already stated, the corporation is not conclusively bound by it; and if upon the whole evidence you are satisfied that the fact is otherwise, you ought to act accordingly.

In regard to the claim of Scott, it is only material in this case upon the question whether the defendant is insolvent or not. If the defendant owed Scott this amount of money, of course, the fact is a material element in the inquiry whether it was solvent or insolvent. Otherwise it is not a matter to be inquired of in this case, because there are enough of admitted claims to maintain this action. Evidence has been introduced by the plaintiffs from the books and em-

ployees of the defendant, that Scott furnished it some five thousand five hundred dollars in money. It appears that during the summer of 1874 he furnished the book-keeper of the defendant certain amounts of money from time to time, which money it had the benefit of. Prima facie, this shows that the defendant owes Scott that amount of money. But that may not be the case. There may be something behind this which would show the fact to be otherwise. But unless the defendant does show the contrary, if you believe the evidence of the plaintiff upon this point, you should find that the defendant owes Scott as stated in the petition. The only evidence offered upon this point by the defendant is a deed or declaration of trust executed by Scott, from which it appears there had been conveyed to him absolutely by the Oregon Real Estate Company certain blocks of land in East Portland. This instrument was executed to show the true nature of that transaction, and by it Scott acknowledges that he is not the absolute owner of the property mentioned, but that he holds it in trust for the purpose therein mentioned. By this instrument Scott acknowledges that he holds this property as a security for any money he might advance to the defendant. The transaction is not one between the Oregon Real Estate Company and the defendant, but the former and Scott, for his security. Scott might have pledged this property for this money, or he might have obtained it in another way, but, however he obtained the money, he furnished it to the defendant, and for aught that appears in this instrument, he is its creditor to that amount, and not the Oregon Real Estate Company. Therefore, I instruct you that this instrument does not in any way affect the case upon this point.

As to the third point in the plaintiffs' case: The payments to the Western Union Telegraph Company and Ankeny, or some of them, must not only have been made when the defendant was insolvent, but with an intent to prefer such creditor. If you find that the defendant was solvent when these payments were made, that will be the end of your inquiry, and your verdict should be for the defendant. But if you should find that the defendant was insolvent at the time any of these payments were made, then such payment being made with intent to prefer, is an act of bankruptcy. The bankrupt act declares that any debtor who, being insolvent, shall make any payment with intent to give a preference to one or more of his creditors, may be adjudged a bankrupt. If, then, the defendant was insolvent at the time it made any of the payments alleged in the petition to the Western Union Telegraph Company, or Ankeny, it thereby gave a preference—that is, it paid these parties their debts in full when it was not able to pay all its creditors in full, and by so much

as it paid these parties more than their proportion of the assets, it preferred them to its other creditors; and in this respect it makes no difference whether the transaction was a great or small one. If a debtor, being insolvent, pays any creditor the full amount of his debt, he thereby gives him a preference. This is the natural and necessary consequence of his act. No particular or specific evidence is necessary to prove the intention to prefer. The act itself is sufficient evidence of the intent, because a party is presumed to intend the natural and necessary consequences of his act. For instance, if either of you had but one hundred dollars in money, and owed four other persons one hundred dollars each, and were to pay one of them, who might be your friend, that one hundred dollars, it is to be presumed that you intended to prefer him to the others; the law makes this presumption, because such is the natural and necessary consequence of your act.

The only exception to this conclusion is, where an insolvent debtor makes a payment which is a preference, believing himself solvent, or not being aware of his insolvency. In such case the law would not presume that he intended the preference. A debtor may be insolvent and not know it; but if such be the fact, it is incumbent upon him to show it. The law presumes that a person, and particularly a corporation, knows the state of its own affairs; and if the fact is otherwise, the party claiming the benefit of it must show it. If a debtor is in fact ignorant of his own insolvency, the law will not presume that he made a payment with intent to prefer, although such was the effect of it; or rather proof of his want of knowledge will overcome the presumption that he did so intend. Upon this point I have been asked by the defendant's counsel to instruct you, that if the parties who received these payments did not know that the defendant was insolvent, then there was no intent to prefer. I decline to give you the instruction, because, so far as this proceeding is concerned, it is immaterial what was the knowledge or motives of the parties who received these payments. Counsel for the defendant also asks me to instruct you, that a payment made in the ordinary course of business, and for the purpose of carrying on such business, is not within the purview of the act relating to payments by an insolvent with intent to prefer, and that an insolvent debtor making a payment under such circumstances does not thereby commit an act of bankruptcy. I do not so understand the law. If a debtor is insolvent and unable to carry on his business, there is only one of two things to be done. He must either stop business, or go on with the consent of his creditors. He is dealing with other men's property—the property of his creditors—and he must stop then or get their consent to go on. The payments to the Western Union Telegraph Company and An-

keny, if made when the defendant was insolvent, are acts of bankruptcy. The defendant. if insolvent, had no right to carry on business except with the consent of his creditors; it had no right to pay any of its debts in full. I am also asked by counsel for defendant to instruct you that it is admitted in the pleadings that these payments were made by the defendant in the usual and ordinary course of its business, when and as the same became due, without any intent, object, or design to hinder or obstruct the operation of the bankrupt act. I decline to give the instruction, because the question in this case is not whether the defendant made these payments with intent to hinder, delay, impede, or obstruct the operation of the bankrupt act, although such may have been the ordinary effect of them, but whether it made them with intent to give the parties receiving them a preference. It is true that it is admitted in the pleadings that these payments were made in the ordinary and usual course of business, but that is an immaterial matter, except as you may think it throws light upon the question of the defendant's insolvency at the time they were made. The fact that these sums were paid as such payments were usually made for telegrams and rent—on the first of the month —does not change the character of the act, because the defendant had no right to make such payments, if it was insolvent, at the expense of its other creditors. But the fact that it was not an extraordinary transaction —one not out of the usual mode of doing its business—may be considered by you, and given such weight as you think it ought to have. If a debtor makes an unusual payment to a particular person, it may be inferred from that fact, or it may tend to prove, that he is in failing circumstances, and intended to provide for this person. But no such inference could be made from these payments on any such ground, for they were not unusual or out of the ordinary course of business. But it does not follow from this fact that the debtor was solvent.

Counsel for defendant asks me to instruct you, that under the bankrupt law, a debtor cannot pay his debts after proceedings in bankruptcy have been commenced against him. This instruction is asked for, I suppose, to meet the suggestion to you in the closing argument of plaintiffs' counsel, which was, that if the defendant was solvent, why didn't it pay its debts and stop this proceeding; and you were asked to infer from the fact that it did not pay them, it was unable to do so. Upon this point I instruct you, that a debtor who is solvent may pay any or all of his debts, whether proceedings in bankruptcy are pending against him or not. Under such circumstances, a creditor might be disinclined to receive his debt and run the risk of being charged with knowingly receiving a preference, unless he had good reason to know or believe that the debtor was solvent notwithstanding the proceedings in

bankruptcy. But there is nothing in the fact that proceedings in bankruptcy are pending against a debtor which prevents him from paying his debts if he is in fact solvent. True, if the creditors, for fear of forfeiting their debts, will not receive them, he cannot do more than offer to pay them. But if a debtor is able and willing to pay all his debts, there can be no risk or danger in any creditor accepting his debt, because the payment of all his debts cannot operate to prefer any one, and, therefore, there is no one to question the transaction. Besides, the very fact of payment in full proves that he is, so far as the creditors are concerned, solvent. If a debtor has the means of paying all his debts in full, there can be no difficulty about doing it, even if proceedings in bankruptcy are pending against him; and therefore you have a right to take into consideration the fact that this proceeding is pending against this defendant upon these debts, and draw such inference therefrom as men of ordinary sense would do. In this connection, you may also consider the fact, that the defendant suspended business shortly before the commencement of this action. No particular explanation has been given of this suspension except what appears from the testimony of Mr. Odeneal, the business manager of the defendant. Corporations engaged in the business of publishing newspapers do not usually suspend operations without some reason for it. It also appears that the newspaper of the defendant was supported for some time—for eight months—by the voluntary contributions of certain persons who were interested in maintaining its existence; and this is a circumstance to be considered by you, and you are to say for yourselves whether a solvent corporation would be supported by voluntary contribution from the outside or not. Page 45 of a book, which is admitted to be the record or minute of the proceedings of the defendant, has been offered in evidence by the plaintiffs to prove that the mortgage executed to Odeneal was authorized by a vote of the directors. This minute or record of the proceedings also contains certain directions concerning the giving of a mortgage and note to Scott, one of the plaintiffs in the case. Counsel for defendant ask you to make an inference from what is therein stated concerning its indebtedness to Scott, and that I instruct you, the entry in this respect is to have the same effect as if it had been introduced by the defendant, which I do. You are to consider this page of this record as evidence before you; and, so far as it tends to prove any disputed fact in the case, you will give it whatever weight you think it is entitled to.

Counsel for defendant also asks me to instruct you, that the voluntary contributions received by the defendant are not debts owing by it, and that the amount of such contributions promised but not paid are to be considered as its assets. It appears from the evidence, and is admitted in the argument, that between October, 1874, and May, 1875, the defendant received from certain parties four thousand dollars, at the rate of five hundred dollars per month, to enable it to publish its newspaper; that this sum was furnished by these parties in pursuance of a written agreement with one another to that effect; and that when the defendant suspended business, there was behind on said subscription the sum of two thousand dollars, or four months' contributions. Upon this point I instruct you, that the four thousand dollars, being a voluntary contribution, is not a debt owing by the defendant, and is not to be counted among its debts in ascertaining the question of its insolvency. For the same reason, the two thousand dollars is not a debt due the defendant, and cannot be counted among its assets. The defendant's counsel ask me to instruct you, that this two thousand dollars is a debt due the corporation, because certain parties agreed between themselves to pay it. When it appears that two or three, or more persons agree together upon or for a sufficient consideration to pay a sum of money to a third person—as for instance, this defendant—I am inclined to the opinion, and so instruct you, that the defendant would be entitled to claim performance of the agreement at the hands of either of them, and that the amount, while unpaid, would be a debt due to it. But a mere voluntary agreement between parties to perform such an act, to which the defendant is in no wise a party, I don't think is founded upon a legal consideration, and, therefore, would not raise an indebtedness to the defendant. So far, then, as these contributions are concerned, they are neither assets nor debts. The only effect they can have in this case is upon the question of solvency. The transaction suggests the inquiry, whether it is probable that a solvent corporation would depend upon the voluntary contributions of its friends to carry on its business.

It is now first objected by the defendant, that it does not appear from the petition that the defendant is a "moneyed, business, or commercial corporation;" and, therefore, this court has not jurisdiction of this action; and I am asked to instruct you on that ground that your verdict must be for the defendant. The bankrupt act, by its terms, only applies to "moneyed, business, or commercial corporations," and does not reach other kinds of corporations, such as charitable, religious, and literary societies. There is no allegation in the petition that this defendant is "a moneyed, business, or commercial corporation;" but it is suggested by counsel for the plaintiffs that the court must take notice that it is one of these three kinds, because it is alleged to be a private corporation formed under the laws of Oregon, and that no private corporation can be formed under such laws but for some such purpose. But the corporation law of the state provides for the incorporation of religious, charitable, literary,

and other societies, which are, to all intents and purposes. private corporations. in contradistinction to public or municipal corporations, such as counties, cities, etc., which are invested with a portion of the political power of the state for the management of their affairs and the government of those who come within their limits. It may be that the allegation in the petition, that the defendant is a private corporation formed under the laws of Oregon, and that its principal place of business is in this county, taken in connection with the fact that the very name of the defendant indicates that it was organized for the purpose of engaging in, and carrying on, the business of publishing and printing, shows sufficiently that it is a business corporation. But I am not prepared to pass upon the question in this view of it, and refuse the instruction on the ground that the objection comes too late. If the defendant relied upon this matter as a defense to the action, it should have raised the question by its pleading. I think that by answering the petition and not making the objection, it waived it, and admitted that it was such a corporation as might be proceeded against in bankruptcy and adjudged a bankrupt. Deciding this question upon the spur of the moment, I may be mistaken, but while I have not perfect confidence in the correctness of this conclusion, I instruct for the purposes of this trial. that this action may be maintained notwithstanding this objection.

Take this case then, gentlemen, and find such a verdict thereon as evidence may indicate or satisfy you should be found. Your verdict may be: We, the jury, find for the plaintiffs or defendant, as the case may be.

The jury, after a short absence. returned a verdict for the plaintiffs. upon which an adjudication was afterwards had.

[For a motion for rule to show cause why the proceedings in the district court should not be stayed pending a petition for review, see Case No. 10,560.

[The judgment of this court was reversed by the circuit court, where it was carried by writ of error and petition for review. Case No. 10,-561.]