JOHNSON v. WALD et al.

(Circuit Court of Appeals, Fifth Circuit. April 11, 1899.)

No. 801.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—PREFERENCE.
    Under Bankruptcy Act 1898, § 3, providing that it shall be an act of bankruptcy if a person shall have "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors," the payment and discharge of a debt, by an insolvent debtor, by a conveyance to the creditor of personal property of greater value than the debt, the debtor receiving the difference in cash, is a preference of such creditor, and an act of bankruptcy.

2. SAME—INTENT TO PREFER.
    Where an insolvent debtor transfers to one of his creditors, in payment of his debt, personal property sufficient in value to satisfy the debt in full, his "intent to prefer such creditor over his other creditors," necessary to make such transfer an act of bankruptcy, will be presumed; the preference being the natural result of the transfer.

Appeal from the District Court of the United States for the Northern District of Georgia.

Lewis Wald and three other creditors of J. C. Johnson filed their petition, showing that they each held provable claims against him amounting in the aggregate to more than $500. The petition contained the usual formal averments, and charged that J. C. Johnson, within four months next preceding the time of filing the petition, "at Calhoun, Ga., in said district, on the 13th day of October, 1898, being possessed of and owning certain property described in a certain instrument of writing or deed made by the said J. C. Johnson to J. F. Fields, bearing date on said 13th day of October, 1898, and described and set forth in said instrument of writing made by the said Johnson to the said Fields in the following language, to wit: 'My entire stock of merchandise now located in brick storehouse on Railroad street, in the town of Calhoun, said house being the property of J. B. F. Harrell, now occupied by J. C. Johnson, said stock of merchandise consisting of dry goods, boots, shoes, notions, clothing, hardware; also show cases, tinware, and crockery, iron safe of the Hall Lock Company manufacture; also oil tanks and oil pumps,—in fact everything I have in my said storehouse; also one large iron gray horse, about nine years old, one dray and harness for same; also ten acres of corn, planted on the R. Peters farm, of the value of seventy-five dollars;' also eighteen hundred dollars or other large sum, consisting of notes and accounts held and owned by the said J. C. Johnson against various and sundry parties whose names petitioners are unable to give or the respective amounts of said notes and accounts,—did convey and transfer the same, with all other property herein described, on said 13th day of October, 1898, to J. F. Fields, of Gordon county, Georgia, a brother-in-law of said J. C. Johnson, the said J. C. Johnson being insolvent at the date and time of the transfer of said property within the meaning of said act. The said J. F. Fields being one of the creditors of him, the said J. C. Johnson, said transfer of the said property by the said J. C. Johnson to the said J. F. Fields was made with intent to prefer such creditor over other creditors of him, the said J. C. Johnson. Your petitioners further charge that said transfer of said property by the said J. C. Johnson to the said J. F. Fields was made with intent to defraud your petitioners and defeat the payment of their several claims against him, the said J. C. Johnson." The prayer was that the said J. C. Johnson may be declared a bankrupt. Johnson filed an answer in which he admitted the debts due to petitioners (except one of them), admitted that he was insolvent, and as to the charge of his having transferred his property to J. F. Fields he answered as follows: "He admits making a transfer of his property, as shown by said deed as charged in the petition, to said Fields, but he denies that said transfer was made for the purpose of hindering, delaying, and defrauding his creditors, or for the purpose of preferring said Fields. Said transfer was made in good faith and for a good and valuable consideration, and said transfer is valid under the bankrupt act."

On the trial of the issue, the deed of Johnson to Fields was offered in evidence:

"Deed. J. C. Johnson to J. F. Fields.

"Georgia, Gordon County.

"This indenture, made this the 13th day of October, 1898, between J. C. Johnson, of the county and state aforesaid, of the one part, and J. F. Fields, of the same place, of the other, witnesseth that the said J. C. Johnson, for and in consideration of the sum of twenty-five hundred dollars ($2,500) cash in hand paid, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, and convey unto the said J. F. Fields my entire stock of merchandise now located in brick storehouse on Railroad street, in the town of Calhoun in said county, said house being the property of J. B. F. Harrell and now occupied by said J. C. Johnson, said stock of merchandise consisting of dry goods, boots, shoes, notions, clothing, hardware; also show cases, tinware, and crockery, iron safe of the Hall Lock Co. manufacture; also oil tanks and oil pumps,—in fact everything I have in my said storehouse. The said J. C. Johnson, for and in consideration of the sum aforesaid, also sells, bargains, and conveys unto the said J. F. Fields one large iron gray horse about nine years old, and also one dray and harness for same, and also ten (10) acres of corn planted on the R. Peters farm, and I, the said J. C.

Johnson, unto the said J. F. Fields, for myself, my heirs and executors and administrators, do warrant the title to the property by these presents sold. In witness whereof, the said J. C. Johnson has hereunto set his hand and seal the day and year above written.

"[L. S.]                                                                         J. C. Johnson.

"Signed, sealed, and delivered in presence of

"J. J. Bozeman.

"M. T. Adcock."

O. N. Starr testified as follows: "Last Monday or Tuesday, in justice court at Calhoun, Gordon county, Ga., Mr. Fields stated on oath that he had purchased the stock of goods in controversy in this case from J. C. Johnson, the purchase price being $2,500; that J. C. Johnson owed him a debt of something over $2,000, which he took in payment of the goods; and that he paid him in cash a balance of $480. J. C. Johnson also, under oath, testified that he took a debt to Fields, amounting to something over $2,000, for the purchase of this stock of goods, and J. F. Fields paid him a balance of the purchase price of between $400 or $500. J. C. Johnson told me on other occasions since the controversy in this case that this transfer was made to pay Fields' debt. He told me further that he had transferred to Fields notes and accounts amounting to about $1,800. When he was under oath last Monday or Tuesday, he stated that what he said to me then was not under oath,—he was simply talking about the notes and accounts,—that he had the notes amounting to about $1,500 in his possession, and that he had turned over to Fields notes and accounts amounting to $200 or $300. Johnson also said, under oath, that he was insolvent, and did not know whether he owed more or less than $5,000, and that he had no property. I heard this myself personally. Both parties, Johnson and Fields, stated that this stock of goods was transferred to Fields in settlement of the debt due by Johnson to Fields, and in consideration of the cash of $480. I so understood it. Fields testified that in so many words." This was all of the evidence.

On the hearing, J. C. Johnson was adjudged an involuntary bankrupt, and he appealed to this court. The action of the court in declaring and adjudging him a bankrupt is assigned as error.

L. A. Dean and C. P. Goree, for appellant.

E. T. Florence, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the facts, delivered the opinion of the court. The only question raised by the record is whether or not the execution of the deed by Johnson conveying his property to Fields was an act of bankruptcy. He was insolvent, and was indebted to Fields in about the sum of $2,000. The property conveyed was estimated to be worth $2,500, and Fields paid Johnson in cash $480. By section 3 of the bankruptcy act of 1898, "acts of bankruptcy by a person shall consist of his having * * * transferred while insolvent any portion of his property to one or more of his creditors with intent to prefer such creditor over his other creditors. * * *"

The appellant contends that the bankruptcy act of 1898 does not make a "payment" in property, with the intent to give a preference to the creditor so paid, an act of bankruptcy. It is claimed that the provision, in that regard, of the bankrupt act of 1867, is omitted from the act of 1898. While it is true that the word "payment" is not used in the latter act in the same connection in which it is used in the former, the language used leaves no doubt of the intention. Paragraph 25 of section 1 of the act of 1898 is in these words: "* * *

'Transfer' shall include the sale and every other and different mode of disposing of or parting with property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security." The conveyance made by Johnson to Fields clearly gave him a preference. Section 60, par. a, of the act makes it a preference. "A person shall be deemed to have given a preference if, being insolvent, he has  *  *  * made a transfer of any of his property, and the effect of the enforcement of such  *  *  * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." The fact that Johnson received $480 in money, which in his pocket could not be reached by execution, does not alter the effect of the transfer. That the deed was made with intent to prefer Fields is shown by the deed itself, since one must be presumed to intend the natural result of his own acts.

The judgment of the district court is in conformity with the views here expressed, and it is affirmed.