MACON GROCERY CO. et al. v. BEACH.

(District Court, S. D. Georgia, N. D.  October 1, 1907.)

BANKRUPTCY—ACTS OF BANKRUPTCY—PAYMENT WITH INTENT TO PREFER CREDITOR.

Under Bankr. Act July 1, 1898, c. 541, § 3a (2), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], which makes it an act of bankruptcy if a debtor shall have "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors," there is a presumption that a debtor in making such a transfer intended the natural consequences of his act; but the presumption of an intention to give a preference within the meaning of the act may be affected by the amount of the property transferred, and the payment by an insolvent, whose indebtedness amounted to $13,000, of the sum of $2.75 in settlement of a current store bill, in the usual course, cannot be held to raise such a presumption which will overcome his testimony that the payment was not made with any such intention.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 137.]

156 F.—64

In Bankruptcy. Petition in involuntary bankruptcy. On exceptions to report of special master.

Olin J. Wimberly, for petitioners.
John P. Ross, for defendant.

SPEER, District Judge. The Macon Grocery Company and other creditors made petition, by which it was sought to obtain an adjudication of involuntary bankruptcy against Asa N. Beach. The indebtedness of Beach amounted to about $13,000. The amount of his assets is not stated, and the proceeding is obviously brought as a basis for an equitable application to the bankruptcy court, designed to subject large values which in one way and another had been conveyed by Beach to a Miss Julia Dixon, whose agent for a long time he had been. Miss Dixon is an aged and infirm lady, and Beach was the adopted child of her parents. Her property consisted of plantations, other real estate, and money. It is contended by the petitioning creditors that, while Beach pretended to be the agent for Miss Dixon, they both entered into a general scheme to defraud his creditors. This, it is insisted, was evidenced through the execution by Beach of mortgages to Miss Dixon to secure an alleged indebtedness to her of $11,817. To give the court jurisdiction to make a decree or decrees canceling the conveyances of Beach to Miss Dixon, and recovering for the benefit of creditors the property he conveyed, it must first be made to appear that Beach is a bankrupt as alleged.

To accomplish this, the plaintiffs make four averments of bankruptcy. The first is that Beach, while insolvent, drew a draft on Little, Williams & Co., cotton brokers, in favor of the Louisville Drug Company, for $19.85, and that this payment was made on October 1, 1901, with intent to prefer the drug company over other creditors. The second is that the defendant did on the same date pay to J. J. Keith, one of his creditors, the sum of $2.75, with intent to give him a preference. The third is an alleged preference given to R. L. Bostick, by draft on Little, Williams & Co. for $100. This was paid on September 17, 1901. The fourth is an alleged preference in favor of the Bank of Louisville by the payment of $500. To these charges Beach made answer. The answer did not admit insolvency; but this was admitted in judicio by his attorney, and also by his brief presented to the court. He denied that the acts specified were acts of bankruptcy. The first, third, and fourth payments, he alleged, were made by him as the agent of Miss Dixon, and with her means. As to the second charge, he admitted the payment of the $2.75 to Keith, but denied that this was done with intent to give him a preference. He also answered that he was chiefly engaged in farming and the tillage of the soil, and for this reason insisted that he could not, in terms of the law, be adjudged an involuntary bankrupt.

On the issues thus made much testimony was taken by the contending parties. Finally, by agreement and consent of counsel, the evidence and the issues presented were referred to J. N. Talley, Esq. (who is the standing master in chancery), as special master, with direction to report "his findings and the conclusions upon the law

and the evidence, for such action of the court in the premises as shall seem proper." In an elaborate report, scrutinizing every phase of the controversy, the master finds, first, that Beach is not entitled to exemption from the operation of the bankruptcy law and that he is not chiefly engaged in agriculture. He then sustains the contentions of Beach as to the first, third, and fourth alleged acts of bankruptcy, and finds that such payments were made in behalf of Miss Dixon, and not by Beach from his own assets. The counsel for both parties probably recognizing that by their consent reference they have designated a tribunal whose findings on the facts will rarely be disturbed by the court (Chicago Motor Vehicle Co. v. American Oak Leather Co., 141 Fed. 520, 72 C. C. A. 576, Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764), no exception is made by the defendant to the finding that Beach is not exempt from the operation of the law because of his contention that his chief pursuit is agriculture, and none by the petitioners to the findings on the first, third, and fourth grounds, that the several payments were made as agent for Miss Dixon.

The master, however, finds that Beach, while insolvent, committed an act of bankruptcy, as set forth in the second charge, for the reason that while insolvent, and within four months prior to the filing of the petition in bankruptcy, he paid the sum of $2.75 to J. J. Keith, one of his creditors. This payment is not denied. It is evidenced by the receipt from Keith, which recites the items of the account. This is as follows:

"Louisville, Ga., Jan. 22, 1902.

"Mr. A. N. Beach, to J. J. Keith, Dr. Fancy Groceries, Finest Soda Water and Cream.

| 1901. | | | | | |
|---|---|---|---|---|---|
| June | 13 | To Soda Water | | $ | 05 |
| | 22 | " Bar Soap | | | 05 |
| July | 6 | " Lemonade | | | 05 |
| | " | " Soda | | | 05 |
| | 9 | " Lemonade | | | 05 |
| | " | " Soda | | | 05 |
| | 20 | " Lemonade | | | 05 |
| | " | " Coca Cola | | | 05 |
| | 24 | " Lemonade | | | 05 |
| August | 26 | " " | | | 05 |
| Sept. | 5 | " " | | | 05 |
| | 6 | " " | | | 05 |
| | 7 | " 1 Dressed Doll | | 2 | 15 |
| | | | | $2 | 75 |

"Received from A. N. Beach cash for above acct.
"Oct. 7th, 1901.                                                    J. J. Keith, Jne."

The question to be determined, then, is: Does this payment by Beach, while insolvent, constitute an act of bankruptcy? The oral evidence in the record with regard to this alleged preference is found solely in the testimony of Beach himself, as follows:

"On October 7, 1901, I paid $2.75 to J. J. Keith. It was my debt. The consideration of the debt is shown by the items on the receipted bill. * * * I got the dressed doll for a present. When I paid this little bill to J. J. Keith on October 7, 1901, I owed for mercantile debts something like

$13,000, including the debts due the petitioning creditors. In addition to those of petitioning creditors, I owed several thousand dollars of other debts. When I paid this debt to J. J. Keith, I did not have in mind any of my mercantile and other creditors. I did not pay this debt to J. J. Keith in order to prefer him over my other creditors. In paying this account, it was not my purpose to give J. J. Keith an advantage over my creditors. I did not consider the amount paid Keith a debt."

The relating statutory clause is section 3a (2) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), as follows:

"Acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors, with intent to prefer such creditors over his other creditors."

Can it be, in view of the trivial amount paid by Beach, the character of his purchases, and the general aspect of the transaction, that this must be regarded as a transfer of a portion of his property to a creditor, with intent to prefer such creditor over his other creditors, which will cast his entire estate into bankruptcy. Very great respect should be accorded to the finding of the master, who resolved this question in the affirmative. His report was thoroughly considered, and his reasoning is impressive. It is also true that to adopt literally the deliverances of many courts of acknowledged authority would be to sustain his finding. The strong consensus of opinion on this topic among the courts is clearly stated in Webb v. Sachs, 15 N. B. R. 171, Fed. Cas. No. 17,325. The decision is by the District Court of Oregon. There it was held that:

"If a debtor, with knowledge of his insolvency, does an act which operates as a preference to one of his creditors, he is presumed to have so intended, as that is the necessary consequence of his act; and the additional fact that such debtor was really moved to give such preference for any other or particular reason, such as to save costs or satisfy the solicitations of an importunate creditor, or preserve his good will, or keep up his business, does not affect such presumption. Whatever the debtor's motive may be, he is presumed to intend the natural and necessary consequences of his acts."

See, also, Johnson v. Wald, 93 Fed. 640, 35 C. C. A. 522, 2 Am. Bankr. Rep. 84 (opinion by Circuit Judge Shelby of the Fifth Circuit); Morgan & Co. v. Mastick, 2 N. B. R. 521, Fed. Cas. No. 9,803; Miller v. Keys, 3 N. B. R. 224, Fed. Cas. No. 9,578; In re Smith, 3 N. B. R. 377, Fed. Cas. No. 12,974; In re Silverman, 4 N. B. R. 523, Fed. Cas. No. 12,855; In re Oregon Printing Co., 13 N. B. R. 503, Fed. Cas. No. 10,559.

It is also held, with strong reason, that the testimony of a party himself that he had not a preferential intent is entitled to very little weight, where such intent is plainly presumable. Oxford Iron Co. v. Slafter, 13 Blatch. 455, 14 N. B. R. 380, Fed. Cas. No. 10,637; In re Wright Lumber Co. (D. C.) 114 Fed. 1011. Many other authorities might be cited to the same tenor and effect. It will be found, however, that in each of these cases a substantial preference had been made, that the preferential intent was always inferable, and that the consequent injury to other creditors was significant and distinct. The basic reason upon which all of these determinations are founded is substantially that every person of a sound mind is presumed to in-

tend the necessary, natural, and legal consequences of his deliberate acts. In each case the insolvency of the bankrupt was conceded or proven. Then, when he has made a payment to a particular creditor, he is presumed to have the intent to prefer him, as it will enable that creditor to obtain a greater percentage of his debt than will inure to others. But if the payment on the debt is of that infinitesimal sort that it can have no perceptible consequence, is an intent to prefer a necessary, natural, and legal consequence of such payment? It would seem that the substantial or important character of a payment or transfer must ex necessitate possess large evidential effect to show the intent to prefer. This may be gathered from the statement of Mr. Justice Field, in Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481. Speaking for the court in that case, that great jurist declares:

"It is a general principle that every one must be presumed to intend the necessary consequences of his act. The transfer in any case by the debtor of a large part or all his property while he is insolvent to one creditor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him. * * *"

If this is true, the converse would seem also true. If the alleged bankrupt, although aware of his insolvency, should make a payment of an amount not a large part of his means, but utterly trivial—a payment to which no creditor, in the absence of litigation, would possibly object—it is at least debatable whether such payment must necessarily demonstrate the unlawful intent to give a preference to one creditor to the injury of others. The doctrine which we are discussing, and which the courts have so strongly stated, presupposes that the payment is injurious to the other creditors. But where the facts show that no injury, of which the law would or could take an account, would result, the reason of the rule ceasing, it seems that the rule itself would cease. This is illustrated by the remarks of Judge Bellinger in Re Gilbert, 112 Fed. 951, 8 Am. Bankr. Rep. 101, in the District Court of Oregon, decided in 1902. The case was a petition for involuntary bankruptcy, and the learned judge observed:

"The presumption arising from the transfer of property is affected by the amount of such transfer. Thus, where the transfer was of all one's property, this was held to afford a violent—almost conclusive—presumption of an intent to prefer, where other creditors were unprovided for. * * * In this case the transfer was of a comparatively small part of the property of A. T. Gilbert—so small that the expediency of resorting to a bankruptcy court, rather than permit a distribution of the assets of the bank through the pending proceedings in the state court, may be doubted. If the preferences complained of are set aside, it will add not more than 1 per cent. to the dividends to be paid the general creditors."

Again, in Re Douglass Coal & Coke Co. (D.C.) 131 Fed. 769, it was held that the small size of the payment may be looked to as a circumstance, in connection with others, to justify the conclusion that no preference was intended. The language of the court is as follows:

"Payments of comparatively small sums of money by an insolvent corporation to each of a number of its creditors, made in the usual course of business, do not raise a presumption of an intent to prefer such creditor

over its other creditors, so as to establish an act of bankruptcy by a transfer of property with intent to prefer, within [the] bankruptcy act. * * *"

A fortiori, would one trifling payment to one creditor fail to evoke such presumption. The ruling in that case was by the referee, but the District Court of the Eastern District of Tennessee, in affirming the referee, while recognizing the insolvency of the defendant, observed:

"I nevertheless do not think that a presumption of intent to prefer should be indulged against an insolvent debtor by the mere act of paying certain creditors small sums in the usual course of business, and apparently in the effort to keep its business going, unless there is other and further evidence showing a specific intent to thereby give such creditors an undue preference over others, although such might be the effect of the payment."

Again, in Driggs v. Moore, 3 N. B. R. 602, Fed. Cas. No. 4,083, it was held that payments, made in the usual and ordinary course of trade, and at the time the debt matures, and in the usual mode of paying debts, are prima facie valid.

These citations are perhaps ample to show that the authorities are not in entire accord upon this question. From their consideration we have reached the conclusion that even though a bankrupt has knowledge of his insolvency, if the payment is trivial and is made for the current and obvious expenses of one's daily life and habits, there is no hard and fast rule which will oblige the court to regard the transaction inimical to the bankruptcy law; nor, by parity of reasoning, do we deem the court obliged to conclude, because the other creditors might each have received an infinitesimal benefit, if the payment had not been made, that such payment necessarily, naturally, and logically shows an intent to prefer such creditor over the other creditors. Indeed, the payment here upon which the creditors rely seems to afford a fit occasion for the application of the maxim, "De minimis non curat lex." Since the debts of Beach amounted to $13,000, and since his payment to Keith was of only $2.75, the disadvantage which each creditor suffered because of such payment was less than $1/4000$ of his debt. For instance, one of the petitioning creditors, whose claim amounts to $84, would receive but a fraction over 1 cent. Can such a payment, then, justify the presumption that Beach intended a preference? We do not think so. The transaction was a bagatelle. It was neither immoral nor fraudulent. To apply the general presumption here would make it dangerous for a person in insolvent circumstances to buy and pay for a sack of flour, a flitch of bacon, or a bag of potatoes. To avoid bankruptcy, his family must starve. The soda water and lemonade to the value of 50 cents, with which Beach allays the thirst proper to his clime, were inexpensive refreshments, as innocuous as the "cup which cheers, but not inebriates." More debatable is the effect of coca cola. But his purchase of this mysterious elixir amounted to only 5 cents. The bar of soap, worth five cents, is without the pale of judicial discussion. It is true that there was a dressed doll, the price of which was more extravagant. This was $2.15. Beach testifies that it was "for a present." The evidence fails to disclose upon whom this marvel of art and fashionable millinery was bestowed. It, however, appears that Beach, is a bachelor—an "old bachelor," we may presume—and perhaps the "dressed doll" made happy the heart of some tiny maiden, whose lovely

face and graceful form brought back to the veteran and hapless heart of the alleged bankrupt the memory of features which "love used to wear," in the words of Ossian, "sweet and sad to the soul, like the memory of joys that are gone."

We conclude, therefore, that the payment of 60 cents for soda water, coca cola, and one bar of soap, and $2.15 for a dressed doll, in the absence of all other evidence to that end, does not raise the presumption of an intent to give to the creditor paid a preference over his other creditors. Since it appears from the record that this is the only transaction upon which bankruptcy is now charged or assigned, the finding of the master on the second alleged ground of bankruptcy, namely, the payment to Keith of $2.75, is overruled.

A decree will be entered accordingly.