## In re DOUGLAS COAL & COKE CO.

(District Court, E. D. Tennessee, S. D.   July 6, 1904.)

### No. 546.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER.

Under Bankr. Act July 1, 1898, c. 541, § 3, subd. 4, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410], in order that the appointment of a receiver at the instance of another shall constitute an act of bankruptcy, the appointment must have been made "because of insolvency," and the appointment of a receiver for the property of a corporation in a suit to foreclose a mortgage, in which the bill does not allege insolvency, but a breach of the covenants of the mortgage, does not authorize an adjudication of bankruptcy against the corporation, although it may in fact have been insolvent, and such insolvency may have caused its default.

2. SAME—PAYMENTS WITH INTENT TO PREFER CREDITORS.

Payments of comparatively small sums of money by an insolvent corporation to each of a number of its creditors, made in the usual course of business, do not raise a presumption of an intent to prefer such creditors over its other creditors, so as to establish an act of bankruptcy by a transfer of property with intent to prefer, within Bankr. Act July 1, 1898, c. 541, § 3, subd. 2, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422].

In Bankruptcy. On petition in involuntary bankruptcy.

The following is the report of D. L. Grayson, special master:

Pursuant to the general order of reference, referring all issues in involuntary bankruptcy cases to the undersigned, as master, to report upon the facts as well as the conclusions of law raised by the issues presented in such cases, the undersigned would respectfully report with regard to the above case as follows:

### Original Petition.

The original petition in this matter, which was filed on January 6, 1904, charges a single act of bankruptcy as committed by the defendant company, namely, that on January 2, 1904, and "because of insolvency," a receiver was appointed for, and had been placed in charge of, its property; said act of bankruptcy being predicated upon section 4, of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410], which reads as follows: "Made a general assignment for the benefit of his creditors, or being insolvent applied for a receiver or trustee for his property, or because of insolvency a receiver or trustee had been put in charge of his property under the laws of a state, or of a territory, or of the United States."

### Original Answer.

The answer to this petition contents itself with a simple denial of the above act of bankruptcy, but it does not deny the charge of insolvency. Before a hearing was had upon this petition and answer, an amended petition was subsequently filed, which set up the following facts:

### Amended Petition.

This amendment, after reciting the filing of the original petition, and repeating the charge of the foregoing act of bankruptcy, charges a further act of bankruptcy, predicated upon section 3, subd. 2 of the act of July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], which reads as follows: "Transfer while insolvent any portion of his property to one or more of his creditors with intent to prefer said creditor over his other creditors." Following this general charge, it is alleged specifically that certain payments were made by the alleged bankrupt to the C. D. Kenny Company and A. Muxen & Co., two of its local creditors, within four months preceding the filing of the petition, and with intent to prefer said creditors over its other creditors. It is averred that on the 18th of September, 1903, and while insolvent, the defendant paid to the C. D. Kenny Company a pre-existing debt to the amount of $53.40 in full for goods and merchandise sold to the former by the latter during the month of August, 1903, and that on the 23d day of November, 1903, a further payment was likewise made, and while insolvent, on a pre-existing debt, to wit, $100 upon an indebtedness of $160 owing by the defendant to the C. D. Kenny Company. It is further charged that under exactly similar conditions, and while likewise insolvent, the defendant in September, 1903, paid to A. Muxen & Co. a portion of a pre-existing debt, to wit, the sum of $200, upon an account of $416, and likewise on the 23d day of November, 1903, the sum of $250 upon a pre-existing debt of $299.42. Each and all of the above payments are specifically charged to have been made by the defendant to said creditors while insolvent, and within four months prior to the filing of said amended petition, and with intent on the part of the defendant to prefer such creditors over its other creditors.

### Amended Answer.

The amended answer admits the filing of the original petition, and the charge therein of the commission of the first act of bankruptcy, to wit, the appointment of a receiver, and sets up a denial of the fact that said receiver was appointed because of the insolvency of the company, but avers, on the other hand, that the appointment was due to the sole fact that the company had failed to comply with certain stipulations and covenants in a certain mortgage or deed of trust which it had executed to the North American Trust Company, and that the appointment was made by the Circuit Court of the

United States for the Southern Division of the Eastern District of Tennessee in a suit in equity of the North American Trust Company against the defendant in this cause brought to foreclose said mortgage.

In response to the charge of the commission of the act of bankruptcy set forth in the amended petition, the answer thereto, for the first time, denies the insolvency of the defendant, but avers that the property owned by it, taken at a fair and reasonable valuation, is in excess of its liabilities, and that it is not insolvent, within the meaning of the law. It admits the specific payments to the C. D. Kenny Company and to Muxen & Co. in the amounts and at the times alleged in the amended petition, but sets up, by way of defense to the charge that said payments constitute an act of bankruptcy under clause 2 of section 3, Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], the insistence that all of said payments were made in good faith, not only in ignorance of the fact that defendant was insolvent, but in the bona fide belief that it was solvent, and would be able to continue its business as it had been running before said payments were made. It denies that there was any intent whatever to create a preference in favor of said creditors, but, on the contrary, avers that the payments were made in the regular course of business of the defendant company. It further sets up by way of defense other payments made to the Wilcox-Carter Furniture Company in the sum of $509.49, and to Montague & Co. in the sum of $572 (said parties being two of the three petitioning creditors in this case), likewise alleged to have been made within four months prior to the filing of the petition, and in the regular course of business, and insists that said amended petition ought not to be maintained on account of the alleged preferences to the C. D. Kenny Company and Muxen & Co., because of the fact that said petitioners, Wilcox-Carter Furniture Company and Montague & Co., had likewise received payments, just as had the Kenny Company and Muxen & Co., under similar conditions, and within said four-months period; and these facts are set up in estoppel against the petitioners' maintaining the amended petition.

## Proof.

The above is, in substance, the state of the record with respect to the condition of the pleadings. The only proof introduced on the part of the complainants consists of the depositions of James Sloan, D. P. Montague, E. Gill, and F. V. Brown, and of the original record in the foreclosure suit of the North American Trust Company, heretofore alluded to, which was introduced by consent. The defendant company introduces no proof, except two books purporting to be its ledger and journal, and a memorandum statement filed by its attorney, showing the indebtedness of the company (unsecured), so far as said attorney was advised thereof. This statement, however, is limited to unsecured debts, amounting to a total of something over $27,000, but makes no mention of the mortgage indebtedness. In addition to the production of said ledger and journal, and of the filing of said statement, the only remaining evidence produced by the defendant consists of the depositions of Chas. L. Carter, of the Wilcox-Carter Furniture Company, of L. S. Greenwood, of the C. D. Kenny Company, and of A. Muxen, of A. Muxen & Co., who were examined by the defendant relative to the payments made by it to them, and for the purpose of establishing the proposition insisted upon by the defendant in its answer, that the same were made in the usual and ordinary course of business. This is, in substance, the entire record of the cause.

## Insolvency.

At the outset it is necessary for us to consider whether or not the defendant company was insolvent at the time of the commission of the specific acts of bankruptcy charged in both the original and amended petition, the fact of insolvency being a necessary prerequisite to the commission of an act of bankruptcy. By section 1, subd. 15, Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419], a person shall be deemed insolvent, within the purview of the law, when the aggregate value of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to hinder, defraud, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his

debts. By section 3, subd. "d," 30 Stat. 547 [U. S. Comp. St. 1901, p. 3422], it is provided "that whenever a person against whom a petition has been filed as herein provided under the second and third subdivisions of this section [which second subdivision referred to defines the act of bankruptcy charged in the petition] takes issue with and denies the allegation of his insolvency, it shall be his duty to appear in court on the hearing with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency, and in case of his failing to so attend and submit to examination the burden of proving his solvency shall rest on him." In this case the defendant company did not attend the hearing before the master, through its officers or agents, nor submit to an examination, nor give testimony upon the issue of solvency or insolvency; nor did it produce any papers, books, or accounts, save the ledger or journal and the memorandum statement of unsecured indebtedness, both of which the master finds are incomplete and unsatisfactory—the books, because it appears from the entries therein that references were made to other books of original entries, which were not produced, and because it further appears that no reference is had in said ledger or journal to the indebtedness of $250,000 due to the North American Trust Company, and said memorandum of account is also insufficient because it makes no reference to the secured indebtedness.

It is insisted by counsel for the complainants that the necessary effect of the failure of the defendant to attend as required by this section, and to produce his books, papers, and accounts, and submit to an examination, is not only to throw the burden of proving his solvency upon him, as the law provides, but, having so failed, and in the absence of evidence to the contrary, the court is justified, per se, in assuming that the defendant is insolvent; and there is, in the opinion of the master, some ground for this contention. A presumption of insolvency is raised against a debtor who refuses to produce his books and papers and submit to an examination. In re Rome Planing Mill (D. C.) 96 Fed. 812. A simple denial of the fact of insolvency in the answer, unaccompanied by any affidavits, schedules, or other evidence, does not raise such an issue of solvency as is contemplated by the act, nor sustain the burden of proof. Bray v. Cobb (D. C.) 91 Fed. 102. It has also been held that, when the burden of proof is cast upon the defendant, that means that, in the absence of any proof, the issue shall be found against him. The true test to determine upon whom the burden rests is, against whom would the verdict be given if no evidence was offered on either side? Anderson's Law Dictionary, p. 135; Best's Evidence, p. 268; Millis v. Barber, 1 Mees. 425.

As above stated, what little proof was introduced by the defendant in the effort to sustain the burden of proving its solvency was only partial, and unsatisfactory because unreliable. On the other hand, the complainants, notwithstanding that, in this condition of the record, they were not called upon to go further, nevertheless established by the witness Montague, who is shown to have been engaged in a similar line of business to the defendant, and acquainted with the values of mining properties, that its total indebtedness, including its outstanding bonds, was something over $400,000, and that he ascertained this fact from admissions made to him by officers of the defendant company. He also shows that the aggregate value of the assets of the defendant company at the date of the filing of the petition was $150,000. The master therefore reports that on this issue it sufficiently appears that the defendant company was insolvent at the time of the commission of the respective acts of bankruptcy charged.

### Appointment of Receiver Because of Insolvency.

Was a receiver appointed for the defendant company because of insolvency, within the meaning of the phrase as used in subdivision 4 of section 3 of the amended act of February 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410], heretofore set out? It is a part of the history leading up to the enactment of this amendment that prior thereto, and under the operation of the original law, receivers were appointed in many cases in state courts for insolvents, that method being adopted in certain states in which general assignments are unknown; and, under the rulings of the federal courts of bankruptcy—notably, among others, in the case of the Harper Bros. Publishing Co.

—it was held that such appointments were not tantamount to the making of a general assignment under this clause, and could not be so construed. Hence the appointment of a receiver for an insolvent was, per se, held not to be an act of bankruptcy. To cure this defect in the act, an amendment was ingrafted upon said subdivision 4 of section 3 by the act of February 5, 1903. As the amended bill passed the house, subdivision 4 of said section read as follows: "Made a general assignment for the benefit of his creditors or being insolvent applied for or had been put in charge of a receiver or trustee under the laws of a state or territory or of the United States." If the law as it passed the Senate had been left in this condition, it would have been necessary only to allege that a receiver had either been applied for or had been placed in charge of an alleged bankrupt's property while such bankrupt was in an insolvent condition. That is to say, only two issues could possibly arise—insolvency and receivership resulting therefrom. When the amended bill reached the Senate, the language of the House measure was changed as follows: After the word "for" the clause "or had been put in charge of a receiver or trustee" was stricken out, and the words "a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property" were inserted, and before the word "territory" the word "or" was likewise stricken out, and the words "of a" were inserted in its place, the effect of which was to make said amendment read as it now is in the law as finally passed. See page 1101 of the Congressional Record, 57th Cong., 2d Sess. It does not appear in the Senate debates why this change was made, or at whose instigation it was done. Presumably, it was made in the Senate judiciary committee. But that committee made no written report, and, there being no general debate on the measure, no benefit can be derived upon the question of the proper elucidation of the meaning of this clause from the proceedings prior to its enactment. The defendant insists in this case that a receiver was not appointed for it because of insolvency, but, on the other hand, that such appointment was made because of the violation of certain mortgage covenants contained in a certain mortgage given by it some time before this bankruptcy to the North American Trust Company to secure an issue of $250,000 of first mortgage bonds. On the other hand, complainants insist that while this was the apparent, or, rather, ostensible, reason advanced for the receiver's appointment, the underlying cause was insolvency, in fact, which insolvency set in motion the other grounds set up. It will be seen from the bill under which said receiver was appointed, and the purpose of which is to foreclose said mortgage, that the insolvency of the defendant does not appear from any specific allegations therein made, but the alleged grounds for the appointment, as stated by the bill, are the defendant's default in the payment of interest on said bonds for a year—likewise, its default in the creation of a sinking fund for the ultimate redemption of said bonds—and that defendant has, by reason of said defaults, allowed said mortgage to mature and become payable many years before the bonds were due on their face. Does this showing of said bill justify the logical deduction that this receiver was appointed "because of insolvency"?

It is insisted by the complainants that the consequent change of the language of this clause in the Senate from that contained in the House bill has in no sense altered its meaning, and that, in legal effect, the expression "because of insolvency" is equivalent to the former phrase, "being insolvent," as defined in the House measure. I cannot agree with this contention. The expression "being insolvent," as I consider it, refers alone to the status or condition, in point of fact, while the phrase "because of insolvency" is meant to refer to the result which flows from that status or condition, and not to the status or condition itself. The intent of the change was to limit the act of bankruptcy, where the appointment of the receiver was made at the instance of parties other than the bankrupt, to cases alone in which such appointment was predicated upon insolvency, and to exclude thereby appointments of receivers for solvent corporations—as, for example, in cases where stockholders or directors could not agree as to the conduct of the business, and it became necessary to wind it up, regardless of the insolvency, or to protect minority stockholders in certain cases against undue encroachments upon their rights by the majority, or to wind up solvent partnerships, whose partners could not agree, and various

other cases which might be named, which were evidently intended to be excluded from the operation of the bankrupt law. This character of cases would, of course, be excluded, just as well under the House measure, since they are cases of solvent, and not insolvent, corporations or partnerships; but it was the evident intent by the change of language in the Senate to make the act of bankruptcy dependent upon the state of facts disclosed upon the record in the case before the court making the appointment. To my mind, therefore, in determining the question whether or not the receiver was appointed because of insolvency, it was the intent to preclude the bankruptcy court, in determining the question whether or not an act of bankruptcy had been committed under this amended clause, from looking beyond what appeared upon the face of the record in the case before the court making the appointment, and to prohibit any indulgence in inferences or intendments where the reasons actuating the appointment are not plainly self-evident. This might lead, if tolerated, to results too speculative and imaginary in the extreme.

It is insisted by counsel for the complainants that such an interpretation of this clause clearly results in many cases in a partial failure of the law to accomplish its evident purpose, since ingenious counsel, as may have been the case here, can so frame their bill as to avoid the allegation of insolvency, and obtain the appointment of a receiver on other grounds. It is a sufficient reply to this contention, in my judgment, to state that it is the duty of the courts to construe the law as they find it, and not to attempt by interpretation to supply the defects which it is the manifest duty of the legislative branch of the government, not of the judicial, to remedy.

Furthermore, it may be said that there are, perhaps, but few instances in which receivers could be appointed for corporations or individuals insolvent in point of fact, without such insolvency being relied upon as a ground to secure the same; and these instances are so rare as to be worthy of but little notice. I think the plain purpose and effect of the change in said language from the expression "being insolvent" to the phrase "because of insolvency" was to save the necessity in the bankruptcy case of the petitioning creditors being required to litigate again over the question of solvency or insolvency of the alleged bankrupt, and that it was the intent to preclude the necessity of doing this by the necessary admission or adjudication of such insolvency to be derived from the record in the case in which the appointment was made.

It is insisted by counsel for complainants that the word "insolvency," as used in this section, cannot be limited to the technical definition of insolvency as set out in section 1, subsec. 15, Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419], heretofore quoted, but that such latter definition applies only to the adjudication of bankruptcy when insolvency is a prerequisite therefor, and that the federal courts of equity and the state courts act upon quite a different definition, in that, when they appoint a receiver because of insolvency, it is insolvency according to their own definition. I think it undoubtedly true that, inasmuch as receivers are appointed by both state and federal equity courts in cases other than bankruptcy for insolvent concerns, the term "insolvency," as regarded by them, cannot, perhaps, be limited to the definition given by the act of 1898; but, when we come to consider the making of such appointment as a specific act of bankruptcy, it is certainly essential the case should be brought within the scope of the definition given by the act; and unless, therefore, the property of an alleged bankrupt is less, taken at a fair valuation, than the aggregate of his indebtedness, I do not think he is insolvent in such sense as to make him guilty of an act of bankruptcy by the appointment of a receiver for his estate, although he might be insolvent in the sense that he could not pay his debts in the ordinary course of business. This conclusion is emphasized by the fact that the definition insisted upon by complainants is exactly that used in the former bankruptcy act of March 2, 1867, c. 176, 14 Stat. 517, but which has been changed by the present law. In other words, the court is limited in construing the meaning of the term "insolvency" to the specific definition given by the act, and certainly has no right to adopt any other meaning unless the act itself is silent upon the subject. An expressed definition excludes all inferences. I therefore find that this act of bankruptcy is not made out.

Payments with Intent to Prefer.

Section 3, subd. 2, Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], provides that it shall be an act of bankruptcy "if a person has transferred while insolvent any portion of his property to one or more of his creditors with intent to prefer said creditors over his other creditors." In order to establish an act of bankruptcy under this section, it is necessary to prove, first, a transfer of property to a creditor; second, the debtor's intent to prefer such creditor; third, the insolvency of the debtor at the date of the transfer; the burden of proof being on the petitioners, except as provided in paragraph "d," where the alleged bankrupt fails to appear for examination and to submit his books and papers. In re Rome Planing Mill (D. C.) 96 Fed. 812. Since it has been held that a payment of money is a "transfer of property," and since the master has already found that the defendant company was insolvent at the date of such payments, the only remaining facts necessary to establish this act of bankruptcy are the intent of the debtor to prefer, and the necessary effect of the payment to give a particular creditor or creditors receiving the same a greater percentage of their debts than other creditors of the same class; the latter essential being for some reason omitted by the judge deciding the above case, but it being expressly necessary to show this in order to create a preference as shown by section 60a, Bankr. Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445].

We will deal first with the question of intent. It is insisted by counsel for the complainants that the law upon this is that when the debtor is insolvent in point of fact, and the necessary effect of the particular payment or payments is to create a preference, then the debtor's intent so to do will be presumed; such intent being the necessary and logical consequence of his act. On the other hand, it is contended by counsel for the defendant that such intent cannot be presumed from transactions like the ones we are now dealing with, where the payments were made by the defendant, although insolvent, but in the usual and ordinary course of business. In order to arrive at a correct solution of the meaning of these respective contentions, it is well for us to note the status of the law upon this subject. Under the bankruptcy act of March 2, 1867, c. 176, 14 Stat. 517, there are many cases to the effect that a debtor, knowing his insolvency, who has paid one creditor to the exclusion of others, cannot be heard to say that he did not intend to give such creditor a preference. Martin v. Toof, Fed. Cas. No. 9,167; In re Oregon Bulletin Printing & Pub. Co., Fed. Cas. No. 10,559; In re Drummond, Fed. Cas. No. 4,093; In re Dibblee, Fed. Cas. No. 3,884.

Under the present act it has likewise been held that the intent to prefer will be presumed in the following cases:

(1) From a transfer of a large portion of property by an insolvent to a single creditor. In re Rome Planing Mill (D. C.) 96 Fed. 812.

(2) Where a transfer has been made by an insolvent merchant of his entire stock in trade to a single creditor. Goldman v. Smith (D. C.) 93 Fed. 183.

(3) From a transfer by an insolvent debtor to one of his creditors, in payment of his debt, of sufficient personal property to satisfy the debt in full; the debtor receiving surplus difference in cash. In this case the debt was $2,000, the value of the property conveyed about $2,500, and the balance of $480 was paid to the debtor in cash. Johnson v. Wald, 93 Fed. 640, 35 C. C. A. 522.

(4) In the payment of rent by an insolvent debtor on a leasehold interest in a bakery, to continue the business, with intent to defraud creditors by hoarding and secreting the proceeds of the business so continued. In re Lange (D. C.) 97 Fed. 197.

(5) By a sale by an insolvent debtor of all his property to one not a creditor, and the application of the proceeds to the full payment of a part of his creditors, leaving others unpaid. Boyd v. Lemon & Gale Co., 114 Fed. 647, 52 C. C. A. 343.

(6) By the execution by an insolvent of a deed of trust to a single creditor to secure a pre-existing debt. In this case the mortgage secured a debt of $2,885, out of $14,000 of indebtedness. In re Wright Lumber Co. (D. C.) 114 Fed. 1011.

(7) By a transfer to a bank of a large amount of accounts to secure a debt, leaving other creditors unpaid. Anniston Iron & Supply Co. v. Anniston Rolling Mill Co. (D. C.) 125 Fed. 974.

It will be noticed that in each of the above seven cases the transfer was either of a large portion of the debtor's property, as compared with the total value thereof, or it was made for the exclusive benefit of one creditor, or it was a sale of the entire assets of the debtor, with an exclusive appropriation of the proceeds of such sale to the benefit and payment of a few creditors to the exclusion of others, or it was a security by way of mortgage or deed of trust covering a large amount of property, and securing a large debt for the exclusive benefit of one creditor, to the detriment of others; and, so far as I have been able to ascertain by an investigation of the cases under the act of 1867, in which the doctrine ("that insolvency being shown, and the effect of the payment or transfer being to create a preference, that intent will be presumed so to do") is laid down, they are cases analogous to those above cited; and it is apparent from the most casual examination of these cases that what the courts mean by the holding that where the insolvency is shown, and the effect of the transfer as well, the intent of the debtor will be presumed in such cases, is that such is the only logical or reasonable deduction that can be drawn from the act of the debtor with respect to the particular transaction, and that a mere denial on his part of any intent in the particular case to create the preference complained of is wholly inconsistent with his conduct in relation thereto. In other words, in each and all of the above cases it must have been well recognized by the bankrupt himself that in making the particular transfer or payment involving so large a proportion of his assets, and appropriating the same to the exclusive benefit of a single creditor, he must necessarily have known that such creditor was obtaining an undue advantage thereby over the rights of others, and that, in the face of such a condition as this, he cannot be heard to say that he did not undertake such a result. Is the contention of "necessary effect" analogous to the case at bar, and should the same inference of intent be drawn? The payments here in question were, in so far as the proof shows, of maturing debts in the ordinary course of business and in one instance—that of the C. D. Kenny Company—the payment in full of one account was followed by a subsequent sale; and this may have also been true in the case of Muxen & Co., although the proof does not make this clear. Both the witness Greenwood and the witness Muxen testified that these bills were paid in the ordinary course of business, and there is nothing in the record to show that they were paid before maturity, or out of the usual course of business, or that these two creditors were singled out in any way as special recipients of the bankrupt's favor. If it had been intended to make it an act of bankruptcy for a merchant, although insolvent, to make payments to his creditors in the ordinary course of business, nothing else appearing to show an intent to prefer, it seems to me that the law would have so provided. It is true that the answer of the defendant, in so far as it sets up the defense that "all of said payments were made in good faith, in ignorance of the fact that defendant was insolvent, but in the bona fide belief that it was solvent and would be able to continue its business," is not specifically made out, because, as before stated, the defendant has made no proof whatever in this case to sustain this issue, except the depositions of the creditors, or their agents, who were the recipients of the preferences complained of, but I think it does sufficiently appear from their testimony, nothing else appearing to the contrary, that each and all of said payments were made in the usual course of business; and the complainants have, with respect to this issue, rested their case solely upon the proof of the fact that the company was insolvent at the time of the payment, and the insistence that the payment in question operated as a preference, and, having failed to prove any specific intent on the part of the defendant to prefer, I do not think the law authorizes, in a case like this, the presumptive evidence of such intent essential to make it an act of bankruptcy.

It has been held by the Court of Appeals in the case of Clark v. Henne & Meyer et al. (C. C. A.) 127 Fed. 288, that evidence that a debtor, who was a merchant, while insolvent, and within four months prior to the filing of the petition in bankruptcy against him, made various payments of bills maturing,

is insufficient to establish an act of bankruptcy, where there was no evidence that he intended thereby to give a preference or contemplated bankruptcy, nor that the creditors receiving such payments did not thereafter extend credit to him for larger amounts. It is true that the court really decided this case upon another specific act of bankruptcy charged in the petition, and held that the particular act of bankruptcy alleging preferences by way of payments to certain creditors could not be maintained, because the petition failed to set out the names of the creditors or the amounts paid; but they, however, stated that, if the petition had been specific on this point, it could not, nevertheless, have been maintained, because of the lack of proof of any intent to prefer, and also because of their failure to show that subsequent credit was not extended by the alleged preferred creditors on the faith of said payments. There is no proof here in this case that subsequent credit was not extended on the faith of the payments complained of, but the inference, if not the direct proof, is to the contrary.

In the case of In re Bloch et al. (Circuit Court of Appeals of the Second Circuit) 109 Fed. 790, 48 C. C. A. 650, an involuntary petition alleging this ground of bankruptcy was filed, and denied by the answer when the case was tried by a jury. The lower court charged that "if at the date of actual insolvency the alleged bankrupt owed a considerable debt [in this case, a debt of $2,000 out of a total liability of $20,356.79] by a transfer of accounts of the amount of $2,431, which in fact constituted a preference, he must be held to have intended the consequence of his act, and the intent to prefer was conclusively established." This was held to be error, since, though the fact of a payment by an insolvent which operates as a preference is prima facie evidence of an intent to prefer, such evidence may be overcome by proof of ignorance of insolvency, and that the debtor's affairs were such that he could reasonably expect to pay all his debts. While in this case there is no affirmative proof by defendant to rebut the presumption of intent, upon which presumption alone complainants can rely to establish the act of bankruptcy, and while the defendants do not show their ignorance of their insolvency, or that their affairs were such that they could reasonably expect to pay all their debts, I nevertheless do not think that a presumption of intent to prefer should be indulged against an insolvent debtor by the mere act of paying certain creditors small sums in the usual course of business, and apparently in the effort to keep its business going, unless there is other and further evidence showing a specific intent to thereby give such creditors an undue preference over others, although such might be the effect of the payment. But however this might be, the complainants, in my judgment, have failed to establish this act of bankruptcy, because there is no affirmative proof of a competent character by them showing that the necessary effect of the payments complained of was to give such creditors, receiving same, a greater percentage of their debts than other creditors of the same class, but, on the other hand, the defendant proves payments of a similar character made to complainants themselves, and likewise in the usual course of business. From this evidence the master can only conclude that it was the effort of the defendant to treat all of its creditors alike, and to make no discrimination between them, and that, if such discriminations were made, it was merely incidental to the attempt to keep the business going, and not in pursuance of any expressed design. It was essential, in order to maintain this act of bankruptcy, to show that the necessary effect of the payments in question was to give the creditors receiving them a greater percentage of their debts than other creditors in their class. The proof failing to show that similar payments have not likewise been made to all creditors, but the evidence being rather to the contrary, the complainants cannot rely upon this ground of bankruptcy.

### Estoppel.

It is insisted by counsel for defendant that complainants cannot maintain their petitions, either original or amended, because they have received preferences, and have not offered to surrender the same, and that, there being only three creditors before the court, there is a want of the jurisdictional number necessary to maintain the petition, and that, having received similar payments as the creditors Kenny and Muxen, they are estopped to allege this as an act of bankruptcy. Before the amended act of 1903, it was almost universally

ruled, with possibly one exception, that an involuntary petition could not be maintained by creditors who had received preferences within four months, at least, without the surrender thereof, whether such preferences existed by way of payments, deeds of trust, attachments, or other liens. See In re Rogers Milling Co. (D. C.) 102 Fed. 687; In re Miller (D. C.) 104 Fed. 764; In re Burlington Malting Co. (D. C.) 109 Fed. 777; In re Schenkein (D. C.) 113 Fed. 421; First Nat. Bank of New Kensington v. Pennsylvania Trust Co., 124 Fed. 968, 60 C. C. A. 100.

With respect to preferences obtained by way of "attachments or other legal proceedings" instituted within four months, this is still the law, since such preferences so obtained are especially made void by section 67f of the act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]. But the amended act of February 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 415], repeals so much of the provisions of section 57g of the original law (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), as required a creditor to surrender an innocent payment as a condition precedent to the right to file his claim. The payments in question received by these petitioners are presumptively innocent payments of the character which it is not now necessary to refund, under the amended law, since the defendant itself avers that they were made in the ordinary course of business, and there is no evidence that petitioners had a reasonable cause to believe the defendant to be insolvent at the date of their receipt, in which event alone could they be made to refund the same at the suit of the trustee under section 60b, Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445].

Section 59b, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445], which provides for the filing of involuntary petitions by creditors, only requires that they shall have provable claims, and, as well stated by District Judge Ray in the case of In re Hornstein (D. C.) 122 Fed. 266, the proof of the claim, and the allowance thereof, are separate and distinct matters, and a creditor's claim is provable, and he may join in an involuntary petition, notwithstanding the fact that he has received a preference. Although it appears that this case arose since the passage of the amended law, and the judge required the petitioning creditors to surrender their preferences before their claims were allowed, I am nevertheless of the opinion that since their claims are undoubtedly provable, and since, furthermore, their allowance could not be objected to on the sole ground that they had received innocent preferences, they are not required to even surrender them as a condition precedent to maintaining an involuntary petition. If the contrary be the law, it works a manifest injustice between creditors, since it is quite apparent that the C. D. Kenny Company and A. Muxen & Co. could not be required to surrender their innocent payments, and the necessary effect of the insistence that complainants should refund, or have their petition dismissed, would be to give Kenny & Co. and Muxen & Co. an undue advantage, by the retention of their preferential payments received under exactly similar circumstances.

I therefore think that not only have the creditors filing this petition provable claims, in the sense of section 59b, but they likewise have allowable claims, within the meaning of that term as used in other sections of the law, and that, nothing else appearing, they have a right to maintain this petition.

If it is attempted to rest the doctrine of estoppel upon the proposition that, having received preferences of a like character to the Kenny Company and Muxen & Co., they should be debarred from complaining of the preference to Kenny and Muxen as acts of bankruptcy, it is sufficient to say that, in so far as I have been able to investigate, an estoppel of this character only arises as against a person participating or conniving in the alleged act of bankruptcy complained of. In other words, the creditor cannot take advantage of the preferences made to himself; the law being as well settled in bankruptcy as in equity that a person who has become a party to, and taken benefit from a fraudulent conveyance, is estopped thereby to claim the same as an act of bankruptcy. In re Williams, Fed. Cas. No. 17,706. And the same doctrine has been applied in the case of creditors who have assented to the making of a general assignment. They cannot thereafter allege it as an act of bankruptcy. But I do not think the mere fact that a party has received a preference precludes him from complaining of another and distinct preference to another

person. They are separate and distinct transactions and acts of bankruptcy, and the acceptance of the payment to himself cannot be an estoppel on his right to complain of a payment to others, unless involved in the same transaction.

For the reasons stated, it is respectfully recommended that the petition be dismissed.

Wheeler & Trimble and Sidney B. Wright, for petitioning creditors.

Brown & Spurlock, for defendant Douglas Coal & Coke Co.

CLARK, District Judge. In regard to this case, it is only necessary to say shortly that in view of the language of the act of Congress, and the changes which were deliberately made in the provisions of the act while it was before the Senate judiciary committee, I am constrained to affirm the ruling of the referee, and for the reasons which he states. There is no doubt in this case about insolvency being established, in the legal sense; but Congress has used such language as makes it necessary that a receivership in a state court, in order to constitute an act of bankruptcy, must have been established, or the receiver appointed, on the ground of the corporation's insolvency. It is very much open to doubt whether Congress has not here used language which makes necessary a result which Congress itself intended to avoid. Looking to the practical bearing of the question, there is much reason to believe that Congress intended to make the appointment of a receiver in a state court conclusive as a ground of bankruptcy, without requiring this court to inquire into the grounds on which the receivership was created; but the language of the amendatory act is perfectly plain, in requiring that the existence of a receivership in a state court, in order to be a ground of bankruptcy, must have been on account of the insolvency of the corporation, and this leaves open in any case to inquiry by this court the grounds on which the appointment of a receiver was made, and, if the appointment was made on any other ground than that of insolvency, it does not constitute an act of bankruptcy. Now, in the case here considered, the appointment was on account of breaches of covenants—covenants like the covenant to keep down taxes, and the like—and, although these particular acts or defaults strongly tend to show insolvency, they justify the appointment of a receiver, regardless of insolvency; and it seems that, in form, at least, the receivership was established on the ground of breaches of these covenants. I do not think the payments which were made, and which are here called in question, constitute a preference or an act of bankruptcy.

The ruling of the referee is accordingly affirmed, in view of the natural and necessary construction which must be placed upon the language used in the act of Congress. It is accordingly so ordered.

NOTE. Since the decision in the principal case of In re Douglas Coal & Coke Company the opinion of the Circuit Court of Appeals for the Fourth Circuit in the Case of Blue Mountain Iron & Steel Co., 131 Fed. 57, has been published, and the doctrine of the opinion in this case appears to be in substantial accord with the ruling in Re Douglas Coal & Coke Company.