## In re BLOOMBERG.

(District Court, D. Massachusetts. July 10, 1918.)

### No. 22615.

1. BANKRUPTCY ⬤⇒58—ACTS OF BANKRUPTCY—PREFERENTIAL PAYMENTS.

Payment by an insolvent to certain creditors of 25 per cent. of their claims, pursuant to an arrangement made by a creditors' committee, approved by most of them, for settlement of all his indebtedness on that basis, where he had secured funds to complete the settlement, were not preferential, and did not constitute acts of bankruptcy.

2. BANKRUPTCY ⬤⇒91(2)—COMPOSITION—BONA FIDES.

An insolvent debtor, who undertakes to raise funds and compound his indebtedness, should keep accurate accounts, showing what he received and disbursed, and his failure to do so will count heavily against his assertions of honesty and good faith towards his creditors.

In Bankruptcy. Involuntary proceedings in the matter of Hyman Bloomberg, alleged bankrupt. Petition dismissed.

John J. Cummings, of Boston, Mass., for petitioning creditors.
Asa P. French, of Boston, Mass., for alleged bankrupt.

MORTON, District Judge. On February 9, 1915, a meeting of the creditors of the respondent was held, at which a committee was appointed to consider his financial affairs. On February 23, 1915, before this committee had completed its work, an involuntary petition in bankruptcy was filed against him. The committee recommended a settlement with creditors on the basis of 25 per cent., which seems to have been satisfactory to the great proportion of them. Thereupon the respondent sold his store in Brockton, Mass., with its stock and fixtures, which constituted practically his entire assets, to one Sandler for $15,000, in order to obtain the money necessary to carry through said settlement. The date when this conveyance was made is in dispute—the respondent contending that it was on April 29th; the petitioners, that it was not until May 11th. The time is important, because the present petition was filed September 11th, and the only act of bankruptcy originally alleged in it was this transfer. If it took place at the time claimed by the respondent, it was more than four months old when the petition was filed, and was therefore unavailable as an act of bankruptcy. On June 8, 1915, the first involuntary petition was duly dismissed without objection, after notice to all creditors, including the present petitioners.

Following this dismissal the respondent began to carry out the proposed settlement by making payments to his creditors, either personally or through Mr. French, his attorney. Money was placed in the latter's hands for that purpose. Sandler himself, a brother-in-law of the respondent, was a large creditor by reason of his indorsements for the bankrupt. The referee explicitly finds that the arrangement proposed included all the creditors, that Sandler was not preferred by what was done, and that there was no intention to hinder, delay, and defraud creditors.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There was delay in completing the payments of 25 per cent., and before all the creditors had received their money the present involuntary petition was filed, after which no further payments were made. On May 12, 1916, the respondent filed a voluntary petition in bankruptcy, action on which is suspended by reason of the present proceeding.

On October 7, 1915, the petitioners amended their petition, by setting out additional acts of bankruptcy consisting of certain payments of 25 per cent. made to creditors under the settlement arrangement, alleging them to be preferential transfers. On August 28, 1916, a motion to amend was filed by the petitioners, alleging a fraudulent and preferential transfer of a lease to Sandler on May 27, 1915. If objection had been made, this motion would not have been allowed. In re Forbes (D. C.) 235 Fed. 316, No. 19617, August 16, 1916. No objection being made, it was allowed as of course. The allegations of the original petition and of each of the amendments were answered by a formal denial by the respondent, and the issues thus made were referred to and heard by the referee, who has found in favor of the respondent.

The decisive points on which the case turns are the date of the conveyance of the store to Sandler, and the purpose and intent with which it and the subsequent payments and transfer set forth in the amendments were made.

[1] As to the date of the conveyance of the store: This was a question on which the evidence was conflicting. On the one side a conveyance in writing was produced by the respondent, dated April 29, 1915, and the testimony in his behalf was that it was a bona fide instrument, made on the date therein stated. Against this were apparently inconsistent statements and conduct by him and other parties interested. In this conflict of testimony, the learned referee, who saw and heard the witnesses, and was in a much better position to arrive at the truth than this court, which has only a transcript of the testimony, believed the respondent. The situation is one in which the referee's finding carries great weight. I have carefully examined the evidence, and am not prepared to say that it was clearly wrong. It follows that the acts of bankruptcy alleged in the petition as originally filed are not sustained. What was done amounted to an informal assignment for the benefit of creditors. It is argued for the petitioners with much force that the arrangement was for many reasons an unsafe and vicious one from the creditors' point of view. If so, the creditors should have seasonably broken it up, as they had the right to do, by bankruptcy proceedings, or by objecting to the dismissal of the first petition.

The payments by the respondent to several of his creditors, which constitute the acts of bankruptcy set up in the amendment of October 7th, were made by him in carrying out the plan of compromise and settlement on a 25 per cent. basis approved by his creditors. They were made with money procured by him for that purpose from the sale of his store. The transfer of the lease was made, as the learned referee finds, in pursuance of the same plan.

The principles by which it is to be determined whether such pay-

ments and transfer are preferences, or conveyances in fraud of creditors, seem fairly clear. A preference is defined by the Bankruptcy Act as a transfer, the effect of the enforcement of which "will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 (Comp. St. 1916, § 9644). There must be an intent to prefer (section 3a [2] [Comp. St. 1916, § 9587]); but if the effect of the transfer is to give a preference, such intent is presumed on the familiar principle that one is presumed to intend the natural consequences of his acts (Collier, Bankruptcy [11th Ed.] p. 102). If one who is insolvent—and Bloomberg was insolvent—pays an outstanding unsecured claim in full, he obviously gives that creditor an advantage over other creditors in the same class. Not having money enough to pay all, he has paid one. A payment on account, which left the balance of the claim outstanding, would also operate as a preference. But if a debtor, who has property enough to pay all his creditors 25 per cent., pays one of them that percentage for a discharge of the entire debt, it is difficult to see how any preference results. That is what, on the findings of the learned referee, as I understand them, the respondent did; each of the payments alleged in this amendment was made for the discharge of a debt four times as great; there were assets enough to pay all creditors the same proportion, and the intention so to apply the assets; the mortgage of the lease was made in carrying out the settlement, as further protection to Sandler.

[2] If these findings were correct, there was no intention to prefer, and the payments under discussion were not preferences, and did not constitute acts of bankruptcy. The real question at the bottom of this, as of many bankruptcy cases, is whether there was an honest effort to straighten out the respondent's financial affairs, or whether there was not. As to creditors negotiated with and paid by Mr. French, the evidence fully supports the findings of the learned referee. As to the creditors, including Sandler, who were dealt with by the respondent, the evidence as it appears in the transcript is much less satisfactory. An insolvent debtor, who undertakes to raise funds and compound his indebtedness, should keep his accounts of what he realized for property sold, and what disposition he made of the proceeds in definite, clear shape, so that everything he did can be readily scrutinized. Failure to do so should count heavily against his assertions of good faith and equality in the treatment of his creditors. Bloomberg's accounts fall far short of this standing. Moreover, the constant evasions and assertions of ignorance in his testimony and that of Sandler seem to me suspicious, and coupled with their failure to produce satisfactory vouchers and accounts to support their statements would, I think, have led me to decline to give their testimony much weight. But, as has been said with reference to the first point, the learned referee had all this evidence before him, and also saw the witnesses, and got more into the atmosphere of the case than it is possible for an appellate court to do. With some hesitation, I must decline to hold that he was clearly wrong in his conclusions.

Report confirmed. Petition dismissed, but without costs.