## EASTERN DRUG CO. v. BIERINGER-HANAUER CO. et al.

## In re GENERAL DRUG CO.

(Circuit Court of Appeals, First Circuit. November 16, 1925.)

No. 1868.

**1. Bankruptcy ⬤⇨56—Whether transfers within four months of filing of petition constituted act of bankruptcy determined from all facts and circumstances.**

Whether transfers by alleged bankrupt within four months of filing petition constituted an act of bankruptcy must be determined from all facts and circumstances in evidence.

**2. Bankruptcy ⬤⇨58—Intent to prefer not inferable from small payments by bankrupt in ordinary course of going business.**

No reasonable inference of intent to prefer can be drawn from comparatively small payments made by bankrupt in ordinary course of a going business.

**3. Bankruptcy ⬤⇨58—Payments to creditors, which in fact accomplished preferences, held to warrant inference of intent to prefer.**

Payments to creditors, made by treasurer of drug company within four months of filing of petition in bankruptcy, and when he knew that concern was hopelessly insolvent, actual results of which were to effect preferences, when considered with presumption that one intends natural and probable consequences of his acts, held sufficient to establish intent to prefer.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

In the matter of the bankruptcy of the General Drug Company. From a final decree adjudicating fact of bankruptcy at date of filing involuntary petition by the Bieringer-Hanauer Company and others, creditors, the Eastern Drug Company, intervening petitioner claiming property of bankrupt under attachment, appeals. Decree affirmed.

For opinion below, see 6 F.(2d) 92.

Francis P. Garland, of Boston, Mass. (Hamilton Tirrell, of Boston, Mass., on the brief), for appellant.

R. R. Sullivan, of Boston, Mass. (A. M. Schwarz, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from the District Court of the United States for the District of Massachusetts from a final decree adjudicating the General Drug Company, a Massachusetts corporation, bankrupt upon an involuntary petition filed on July 24, 1924.

The appellant, the Eastern Drug Company, is an intervening petitioner who had made an attachment of property of the bankrupt on July 17, 1924. The bankrupt filed no answer to the petition that it be adjudged a bankrupt; but the intervening creditor denied the insolvency of the bankrupt, and also that it had committed an act of bankruptcy as alleged in the petition.

The act of bankruptcy alleged is a transfer by the bankrupt within four months of the filing of the petition in bankruptcy, while insolvent, of part of its property to certain of its creditors with the intent to give them a preference.

The learned judge of the District Court has found that the report of the master, to whom the petition was referred for adjudication, "would not establish a transfer with intent to prefer one creditor over other creditors within the meaning of section 3a (2) of the Bankruptcy Act (Comp. St. § 9587), unless such intent is to be implied from the fact that the natural and actual results of the transactions were to effect such preference," but that "one is presumed to intend the probable consequences of his act. * * * The report fails to disclose any facts which would operate to rebut this presumption, and therefore it must be indulged in the present case."

The master's report discloses that the bankrupt conducted two drug stores, one in Dorchester and the other in Medford, Mass.; that one Frank McDermott, an attorney, was its treasurer and one of the chief stockholders, and kept the books of the corporation at his office; that a manager was employed at each of the two stores. It also appears from his report that, beginning with April, 1924, the credit of the alleged bankrupt was so impaired that all purchases of supplies were made on a cash basis, and that, at the time of the filing of the petition, the liabilities of the company were about $25,000, consisting of debts for merchandise to the amount of about $9,000, and loans of approximately $16,000, which had been made to it by its treasurer; that the value placed by the treasurer upon the assets of the corporation was $7,500, and the official appraisal, made August 29, 1924, gave the value of all assets at $6,806; that the witness introduced by the intervening creditor, who examined the assets in July or August, 1924, placed a value of $23,550 upon them; but that, putting the most favorable construction upon the testimony of this witness, the

master found the value of the assets to be under $15,000, and that their value was no greater on April 1, 1924, than when the expert witness of the intervening creditor made his appraisal. The master therefore found that the bankrupt was insolvent on the date of the filing of the petition.

The treasurer of the corporation testified before the master, and stated that he was familiar with the liabilities of the corporation during the period of four months before the filing of the petition in bankruptcy, and that with this knowledge he paid certain creditors, some of them in full and some in part, but testified that, when he made these payments, "I had no intention except to pay the money due; I wanted to keep the business going and knew some of the claims were so small and so much overdue that, if suits were brought, the costs would be out of proportion to the amount. I paid some at the request of my store managers, so that they could continue to get that kind of goods; that is, to keep the business going."

From his testimony the master found:

"That the treasurer had no specific thought in mind that the necessary consequence of his acts in making these payments was that he was in fact preferring the creditors whom he paid; but that, had he given the matter any consideration, he would have realized that this was so."

It is not now contended by the intervening creditor that the alleged bankrupt was not insolvent at the time of the filing of the petition; but the assignment of error relied upon is, in substance, that the court erred in finding and ruling that the alleged bankrupt, in making the alleged preferential payments, was to be presumed as a matter of law to have made them with intent to prefer, and also in finding from the evidence that such payments were made with the intent.

In its brief it states the sole issue to be: "Whether upon the master's findings of fact there was a conclusive presumption that the alleged bankrupt intended a preference."

The District Court did not so rule; but, while stating that the intention to prefer is to be presumed from the transfers which were made by the alleged bankrupt, because that would be their natural and actual result, and that one is presumed to intend the probable consequences of his acts, he also stated that "the report fails to disclose any facts which would operate to rebut this presumption, and therefore it must be indulged in the present case."

[1, 2] He therefore did not rule that the transfers which were made were conclusive evidence of an intent to prefer, but that the facts were not sufficient to rebut this presumption. Whether or not transfers made by an alleged bankrupt within four months of filing the petition against him constitute an act of bankruptcy must be determined from all the facts and circumstances shown by the evidence in the case. Where comparatively small payments have been made by the bankrupt in the ordinary course of a going business, no reasonable inference may be drawn that they were made with an intent to prefer.

See Goodlander-Robertson Lumber Co. et al. v. Atwood, 152 F. 978, 82 C. C. A. 109; In re Douglass Coal & Coke Co. (D. C.) 131 F. 769; In re Bloomberg (D. C.) 253 F. 94; In re Freeman Cotting Coat Co. (D. C.) 212 F. 548.

[3] It is apparent, however, that, when the alleged payments were made in this case, the treasurer of the corporation knew that it was hopelessly insolvent; that he had been compelled to advance money to pay executions recovered against it to keep it going and to provide it with necessary capital until its indebtedness to him was approximately $16,000. With this knowledge, out of the money derived from sales, the master has found that he made two payments to himself on account of its pre-existing indebtedness to him, one of $426.70 April 7, 1924, and the other for $100 June 7, 1924; that he also paid the Massachusetts Drug Company $400 on April 23, 1924, $150 on April 29, 1924, and $100 on May 14, 1924. On April 16, 1924, he paid Louis Jeselsohn, Inc., $305, and that other creditors were paid smaller sums from time to time during the four months' period.

The only reasonable inference that can be drawn from these payments, considered in connection with the presumption that one intends the natural and probable consequences of his acts, is that they were made with an intent to prefer.

The decree of the District Court is affirmed with costs to the appellees in this court.